902 A.2d 1195

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. MAURICE PIERCE, DEFENDANT–APPELLANT.

Argued November 30, 2005—Decided August 2, 2006.

*Marcia H. Blum,* Assistant Deputy Public Defender, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney; *Ms. Blum* and *Michael C. Kazer,* Designated Counsel, on the briefs).

*Jeanne Screen,* Deputy Attorney General, argued the cause for respondent (*Peter C. Harvey,* Attorney General of New Jersey, attorney).

Justice LaVECCHIA delivered the opinion of the Court.

In the companion appeal of *State v. Thomas,* 188 *N.J.* 137, 902 *A.*2d 1185 (2006), we held that a sentencing court may find as fact the existence of a prior conviction for purposes of determining a defendant's statutory eligibility for extended-term sentencing under a mandatory sentence-enhancing statute. We found that the non-qualitative assessment involved in that fact-finding was permissible under Sixth Amendment principles set forth in *Apprendi v. New Jersey,* 530 *U.S.* 466, 120 *S.Ct.* 2348, 147 *L.Ed.*2d 435 (2000) and *Blakely v. Washington,* 542 *U.S.* 296, 124 *S.Ct.* 2531, 159 *L.Ed.*2d 403 (2004).

In this appeal, we consider a challenge to a discretionary extended-term sentence. Defendant contends that his Sixth Amendment rights were violated by the judicial fact-finding involved in sentencing him as a persistent offender under *N.J.S.A.* 2C:44–3(a). We hold that a sentencing court does not engage in impermissible fact-finding when it assesses a prior record of convictions and determines that a defendant is statutorily eligible for a discretionary extended term as a persistent offender. Case law, however, has added to the requirements imposed on sentencing courts when engaging in discretionary extended-term sentencing. The additional fact-finding as described in *State v. Dunbar,* 108 *N.J.* 80, 527 *A.*2d 1346 (1987), and *State v. Pennington,* 154 *N.J.* 344, 712 *A.*2d 1133 (1998), established a sentencing procedure that allegedly operates inconsistently with the principles articulated in the Supreme Court's recent Sixth Amendment decisions. Accordingly, we are compelled to modify our prior direction to sentencing courts in respect of the discretionary extended-term sentencing process.

I.

For his robbery of a victim at gunpoint, defendant Maurice Pierce was indicted for first-degree armed robbery, in violation of *N.J.S.A.* 2C:15–1; third-degree unlawful possession of a weapon without a permit, in violation of *N.J.S.A.* 2C:39–5(b); and second-

degree possession of a weapon for an unlawful purpose, in violation of *N.J.S.A.* 2C:39–4(a). A jury found him guilty of all three counts and, in a separate trial, the jury found him also guilty of second-degree possession of a weapon by a prohibited person, in violation of *N.J.S.A.* 2C:39–7.

Defendant's conviction for first-degree armed robbery enabled the State to file a motion requesting that the trial court find defendant to be a persistent offender and sentence him to a discretionary extended term. *See N.J.S.A.* 2C:44–3 (conferring discretion on sentencing court to impose, on application made, extended-term sentence on persistent offender). The sentencing court applied the stepped analysis identified in Dunbar to determine whether to sentence defendant, as requested by the State, to a sentence within the discretionary extended-term range on the first-degree armed robbery conviction (Count One). The court initially examined whether the minimum statutory requirements for *N.J.S.A.* 2C:44–3(a) sentencing were present (step one). The court found that defendant's age and the nature, number, and timing of his prior convictions rendered him eligible for persistent offender status. The finding was not disputed at the sentencing hearing. Defense counsel placed on the record defendant's concession that he met the statutory predicates because defendant, who was twenty-two years old when he committed the armed robbery and who was twenty-four years old at the time of sentencing, had seven prior adult indictable convictions, seven juvenile adjudications, and other juvenile charges that had been dismissed. The dates and temporal proximity of the convictions and adjudications in defendant's past were made part of the court records.

The court then turned to the three additional steps set forth in *Dunbar.* Examining defendant's adult prior convictions, which included burglary, eluding, possession of a handgun, and receiving stolen property, the court found that defendant had resisted efforts at reform and that he had a "propensity towards further persistent criminal conduct." Based on that assessment, the court concluded that there was a need to protect the public and that

therefore a sentence within the extended-term range was appropriate (step two). The court then evaluated the aggravating and mitigating factors for purposes of establishing a base term (step three) and also analyzed whether to impose a period of parole ineligibility (step four).

As a result, the court imposed an extended sentence of forty years of incarceration, with a period of sixteen years of parole ineligibility.[1] Defendant's sentence was ten years below the presumptive sentence applicable to the extended range. *See N.J.S.A.* 2C:43–7(a)(2) (setting range for first-degree extended sentence between twenty years and life imprisonment) and 2C:44–1(f)(1)(establishing fifty years imprisonment as presumptive sentence for first-degree extended term).

After defendant's conviction and sentence were affirmed by the Appellate Division in an unpublished per curiam opinion, we granted his petition for certification, "limited solely to the issue of defendant's extended term sentence." *State v. Pierce,* 186 *N.J.* 241, 892 *A.*2d 1288 (2005).

## II.

According to defendant, our present sentencing procedures for discretionary extended-term sentencing under the persistent offender statute violate the Sixth Amendment.[2] Based on the

---

[1] On Count Two, third-degree unlawful possession of a firearm, the court imposed an ordinary term of four years, to run concurrently with the extended sentence imposed on Count One. On Court Three, second-degree possession of a firearm for an unlawful purpose, the court imposed an ordinary term of eight years, with a parole ineligibility period of three years, to run concurrently with the other two counts. On defendant's separate conviction for second-degree possession of firearm by a previously convicted person, the court imposed an ordinary term of eight years, to run concurrently with the other sentences imposed by the court. Appropriate penalties and fines were also ordered by the court.

[2] The Sixth Amendment, which provides to every person accused of a crime the right to a trial by jury, is binding on the states through the Fourteenth

Supreme Court's decisions in *Apprendi* and *Blakely,* he argues that his Sixth Amendment rights are violated when a court, and not a jury, decides facts that determine whether he will be sentenced to a term of imprisonment that exceeds the maximum for the ordinary-term range otherwise applicable for his conviction. The question is whether any fact-finding, other than the fact of prior convictions, was *necessary* before the court could impose defendant's persistent-offender sentence.

### III.

### A.

New Jersey's Code of Criminal Justice ("Code") provides for ordinary sentences, *N.J.S.A.* 2C:43–6a, as well as extended-term sentences that carry greater punishment for the same crime. *See, e.g., N.J.S.A.* 2C:43–6(c), 2C:43–6(f), 2C:43–7, 2C:44–3; *see also Dunbar, supra,* 108 *N.J.* at 87, 527 *A.*2d 1346 (explaining that Code's extended sentence structure "drew upon [pre-Code] practice of distinguishing between increased terms and ordinary terms of imprisonment for the same crime based not on the prediction of future criminality, but on the past record of criminality."). Some extended-term statutes are mandatory, subjecting the defendant to an extended-term sentence when the court finds certain facts, conditions, or circumstances to exist. *See Thomas, supra,* 188 *N.J.* at 149–50, 902 *A.*2d at 1192 (addressing mandatory extended-term sentences imposed pursuant to *N.J.S.A.* 2C:43–6(f)). Others confer discretion on the sentencing court.

The persistent offender statute, *N.J.S.A.* 2C:44–3(a), grants the sentencing court discretion to impose an extended sentence when the statutory prerequisites for an extended-term sentence are present.

Amendment of the United States Constitution. *See Duncan v. Louisiana,* 391 *U.S.* 145, 149, 88 *S.Ct.* 1444, 1447, 20 *L.Ed.*2d 491, 496 (1968).

> *The court may,* upon application of the prosecuting attorney, *sentence a person* who has been convicted of a crime of the first, second or third degree *to an extended term* of imprisonment if it finds ... [that t]he defendant has been convicted of a crime of the first, second or third degree and is a persistent offender. [*N.J.S.A.* 2C:44–3(a) (emphasis added).]

The prerequisite finding is that the defendant qualifies as a "persistent offender," defined as

> a person who at the time of the commission of the crime is 21 years of age or over, who has been previously convicted on at least two separate occasions of two crimes, committed at different times, when he was at least 18 years of age, if the latest in time of these crimes or the date of the defendant's last release from confinement, whichever is later, is within 10 years of the date of the crime for which the defendant is being sentenced. [*N.J.S.A.* 2C:44–3(a).]

To determine whether a defendant meets the definition of a "persistent offender," a court must examine the defendant's prior record and his or her age at the time of any prior convictions, facts that the State asserts are the " 'who, what, when and where,' " *State v. Dixon,* 346 *N.J.Super.* 126, 140, 787 *A.*2d 211 (App.Div.2001) (quoting *United States v. Santiago,* 268 *F.*3d 151, 156 (2d Cir.2001)), *certif. denied,* 172 *N.J.* 181, 796 *A.*2d 898 (2002), of those prior convictions and that do not entail any additional findings related to the offense for which the defendant is being sentenced.

The State contends, and defendant apparently concedes, that the court's determination that defendant's prior convictions satisfy the statutory prerequisites for finding him to be a persistent offender does not violate *Blakely* or *Apprendi.* Thus, we do not have before us a contention that *N.J.S.A.* 2C:44–3(a) is constitutionally vulnerable because it authorizes a judicial finding that a defendant is a persistent offender. Had that argument been advanced, our decision in *Thomas* conclusively disposes of it.

In *Thomas, supra,* we held that *N.J.S.A.* 2C:43–6(f) does not contravene defendant's due process and Sixth Amendment jury trial rights because a sentencing court, and not a jury, makes the determination that a defendant has the statutorily required number and type of prior convictions to be eligible for sentencing

up to the maximum of *N.J.S.A.* 2C:43–6(f)'s mandatory enhanced range. 188 *N.J.* at 150, 902 *A.*2d at 1193. The finding of the fact of prior convictions does not constitute prohibited fact-finding under *Apprendi* or *Blakely.* In this matter, the sentencing court's fact-findings about defendant's prior convictions required by the persistent offender statute are no different than the judicial fact-finding found to be permissible in *Thomas* in respect of *N.J.S.A.* 2C:43–6(f). Thus, we find no Sixth Amendment violation in the sentencing court's consideration of objective facts about defendant's prior convictions, such as the dates of convictions, his age when the offenses were committed, and the elements and degrees of the offenses, in order to determine whether he qualifies as a "persistent offender." [3] That finding by the court renders defendant statutorily subject to a sentence within the higher extended-term range pursuant to the prior-conviction exception recognized by *Blakely* for the reasons expressed in *Thomas.*

If that were the sole judicial fact-finding involved in our persistent offender sentencing practice, the analysis would end. However, as previously noted, case law has fashioned additional requirements to serve as a guide for sentencing courts engaged in discretionary extended-term sentencing. It is to those requirements that we turn.

## B.

In *Dunbar, supra,* this Court addressed "the standards for imposing an extended term of imprisonment on a persistent criminal offender." 108 *N.J.* at 82, 527 *A.*2d 1346. Pursuant to

---

[3] *See also People v. McGee,* 38 *Cal.*4th 682, 42 *Cal.Rptr.*3d 899, 133 *P.*3d 1054, 1056 (2006) (holding jury determination not required when assessing whether prior conviction qualified as "serious felony" for sentence enhancement statute); *People v. Hill,* 345 *Ill.App.*3d 620, 280 *Ill.Dec.* 908, 803 *N.E.*2d 138, 150 (2003) (holding that no right to jury trial exists as to "the fact of the timing, degree, number and sequence of the defendant's prior convictions [or his age]."); *People v. Rosen,* 96 *N.Y.*2d 329, 728 *N.Y.S.*2d 407, 752 *N.E.*2d 844 (2001) (finding no constitutional right to jury trial to establish facts of prior conviction).

*N.J.S.A.* 2C:44–3(a) through (c), a court *may* sentence a first-, second-, or third-degree offender to an extended term if the defendant is a "persistent offender," "professional criminal," or "hired criminal." That determination, however, was described as merely the first of four steps in the process of extended-term sentencing. *Id.* at 89, 527 *A*.2d 1346. They are:

First, the sentencing court must determine whether the minimum statutory predicates for subjecting the defendant to an extended term have been met. Second, the court must determine whether to impose an extended sentence. Third, it must weigh the aggravating and mitigating circumstances to determine the base term of the extended sentence.

[Fourth], it must determine whether to impose a period of parole ineligibility.

[*Ibid.*]

The Court observed that once a sentencing court has determined that a defendant is eligible for extended-term sentencing because his prior conviction record makes him a persistent offender, the Code provided no further standard to guide the court when determining whether to impose a sentence within the extended-term range. *Ibid.* Concerned that the absence of any standard to channel the court's exercise of discretion could cause sentencing practice to be arbitrary, we determined to fill that void and establish a standard for courts to use. *Id.* at 89–90, 527 *A*.2d 1346.

The originally proposed version of the Code had "required that the court 'incorporat[e] in the record' a finding that 'the defendant is a persistent offender whose commitment for an extended term is necessary for the protection of the public.' " *Id.* at 90, 527 *A*.2d 1346 (quoting *The New Jersey Penal Code, Final Report of New Jersey Criminal Law Revision Commission*, Vol. I: Report and Penal Code at 154 (1971)). The reference to "protection of the public" was not included in the final version of the statute. *Ibid.* However, the *Dunbar* Court found "no evidence of [legislative] intent to adopt any other standard," and thus, required sentencing judges to examine whether, in order to protect the public, imposition of an extended sentence is necessary. *Id.* at 90–91, 527 *A*.2d 1346. The Court found that

[s]uch a standard is consistent with the general mandate in New Jersey that the provisions of the Code be interpreted to further the general purposes of sentencing as defined in *N.J.S.A.* 2C:1–2b, including the insurance of "the public safety by preventing the commission of offenses through the deterrent influence of sentences imposed and the confinement of offenders when required in the interest of public protection."

[*Ibid.* (quoting *N.J.S.A.* 2C:1–2b(3)).]

*Pennington, supra,* reaffirmed the necessity for the "protection of the public" standard to justify imposition of a discretionary extended term and emphasized the importance of a finding of that "necessity." 154 *N.J.* at 354–55, 712 *A.*2d 1133. It is that judicial finding that defendant contends violates *Blakely* because it enables the sentencing court to raise the sentencing maximum above the top of the ordinary-term range in order to impose a sentence within the extended-term range. The "protection of the public" finding entails, in defendant's judgment, a qualitative factual assessment that can only be made by a jury.

## IV.

### A.

In *Dunbar, supra,* this Court was grappling with how to provide guidance to sentencing courts when exercising their discretion to impose an extended-term sentence. 108 *N.J.* at 89, 527 *A.*2d 1346. Underlying the Court's decision was a concern that there should be a check on arbitrarily or irrationally enhanced sentences meted out to persons meeting the minimum eligibility requirements for persistent-offender status. *Id.* at 91, 527 *A.*2d 1346. We were focused, therefore, on the need for a standard for that exercise of discretion. *Id.* at 89, 527 *A.*2d 1346. At the time, *Apprendi* and *Blakely* had not been decided by the Supreme Court. We could not have anticipated the substantial redirection in Sixth Amendment jurisprudence brought about by those decisions. Thus, identification of the top of the permissible sentencing range was not an issue when *Dunbar* was decided. It was in that context then that we adopted the standard of "protection of the public" to provide guidance to courts when exercising the sentencing discre-

tion granted under discretionary extended-term statutes. *Id.* at 90–91, 527 *A.*2d 1346.

*Apprendi* and *Blakely* changed the Sixth Amendment landscape. As a result, *Dunbar*'s elucidation of a "stepped" process to discretionary enhanced-term sentencing, with the addition of a finding about the need for "protection of the public," has produced a sentencing practice under *N.J.S.A.* 2C:44–3(a) that seemingly conflicts with Sixth Amendment principles explicated by *Apprendi* and *Blakely*. The *Dunbar/Pennington* sentencing requirements have led to a perceived conflation of the judicial determination of a defendant's statutory eligibility for enhanced-term sentencing with the court's separate and independent determination whether to use the legally permissible expanded range.

▮ That said, it is the statutory criteria for eligibility that determines whether a discretionary extended-term sentence is illegal as a matter of law. *See State v. Maguire,* 84 *N.J.* 508, 516–17, 423 *A.*2d 294 (1980) (explaining that defendant may be sentenced to extended term "only if the sentencing court expressly finds that [he] is a persistent offender . . . as [that] term[ ] [is] defined in the statute."). Case law has added the distinct requirement that an abuse of discretion standard be brought to bear in the appellate review of sentences. *See State v. Roth,* 95 *N.J.* 334, 364–66, 471 *A.*2d 370 (1984) (holding that appellate review of sentence requires examination of whether correct legislative standards or guidelines have been followed, review for substantial evidence in record to support findings, and determination whether sentence "shocks the judicial conscience").[4] Thus, in respect of the two determinations, once a discretionary extended term sentence is determined to be legally permissible, *Dunbar*'s added finding promotes effective review of the discretionary judgment exercised as part of the sentencing decision. The finding fosters

---

[4] An abuse of discretion standard applies in the review of a sentencing court's decision to impose an extended-term sentence. *See, e.g., State v. Bauman,* 298 *N.J.Super.* 176, 211, 689 *A.*2d 173 (App.Div.1997).

consistency in extended-term sentencing in that arbitrary or irrational sentencing can be curtailed and, if necessary, corrected through appellate review.

At present, both determinations are being made as if each were necessary preconditions to defendant's *eligibility* for extended-term sentencing, which has led defendant to argue that his Sixth Amendment rights were violated by the judicial finding in respect of "protection of the public." According to defendant, that finding goes beyond the "recidivism" or "prior-conviction exception" carved out of *Blakely*'s requirement that a jury determine all facts that render a defendant eligible for a term that exceeds the maximum applicable to the offense for which the defendant is convicted.

Indeed, the specific judicial finding of "necessity to protect the public" added by operation of *Dunbar* and *Pennington,* involves an evaluation of the "entire person of the defendant before the sentencing court," *Dunbar, supra,* 108 *N.J.* at 91, 527 *A.*2d 1346, and necessarily encompasses a judicial assessment and finding that goes beyond the objective facts of a defendant's criminal-conviction record. Like the assessment of "recidivism" aggravating factors reviewed in *Thomas,* the judicial finding of "need to protect the public" exceeds a mere finding of the existence of a prior conviction.[5] It is unlike an examination of the record of a prior conviction in order to determine whether the earlier conviction qualifies as the type required by an enhancement statute. *See, e.g., McGee, supra,* 42 *Cal.Rptr.*3d 899, 133 *P.*3d at 1056. Rather, *Dunbar*'s supplemental finding, from the inception, contemplated an added factual assessment of the defendant's whole person. *See Roth, supra,* 95 *N.J.* at 360, 471 *A.*2d 370 (noting that central focus in second-tier sentencing provisions of enhanced-term statutes is on offender-related characteristics) (citing *Maguire, supra,* 84 *N.J.* at 516–17, 423 *A.*2d 294). Thus, the "need to

---

[5] *Dunbar, supra,* explains that, primarily, the "standard encompasses the doctrine of deterrence." 108 *N.J.* at 91, 527 *A.*2d 1346.

protect the public" finding does not fit within the limits of the prior-conviction exception recognized in *Blakely*. *See Thomas, supra*, 188 *N.J.* at 153, 902 *A.*2d at 1194 (concluding similarly in respect of aggravating factor that considers need to deter). The determination calls for a finding beyond the pure fact of the prior conviction, and involves the very exercise of judicial discretion. *See State v. Foster*, 109 *Ohio St.*3d 1, 845 *N.E.*2d 470 (2006) (examining statutorily required judicial finding of "need for protection of public" when sentencing repeat offenders and concluding that that finding violates *Apprendi* and *Blakely*).

That said, in light of the Supreme Court's recent Sixth Amendment decisions, we must restate the sentencing procedures established in our prior cases to set in proper perspective the timing and purpose of the judicial fact-finding related to the "need for protection of the public." That finding is not made until after a defendant has been determined to be subject, for *Apprendi* purposes, to a sentence up to the maximum of the discretionary extended-term range based on statutory eligibility as a persistent offender. The determination of the length of sentence imposed on a defendant and whether that sentence should be within the permissibly enhanced range are, and henceforth must be regarded as, separate and distinct from the court's determination of the top of the entire range of sentences to which a defendant is potentially subject as a persistent offender. The sentencing court must first, on application for discretionary enhanced-term sentencing under *N.J.S.A.* 2C:44–3(a), review and determine whether a defendant's criminal record of convictions renders him or her statutorily eligible. If so, then the top of the range of sentences applicable to the defendant, for purposes of *Apprendi*, becomes the top of the enhanced range. Thereafter, whether the court chooses to use the full range of sentences opened up to the court is a function of the court's assessment of the aggravating and mitigating factors, including the consideration of the deterrent need to protect the public. Consideration of the protection of the public occurs during this phase of the sentencing process. The practical application of

that sentencing process is set forth below in the context of defendant's sentencing.

## B.

As noted, *Dunbar* instructed sentencing courts in a step-by-step process that first requires the court to determine whether the minimum statutory eligibility requirements for an extended-term sentence are present. In defendant's case they clearly were. That determination, based on objective facts gleaned from the record of a defendant's criminal convictions, may be made by the court. *See Thomas, supra,* 188 *N.J.* at 150, 902 *A.*2d at 1193; *see also State v. Allen,* 706 *N.W.*2d 40, 48 (Minn.2005), *cert. denied,* —— *U.S.* ——, 126 *S.Ct.* 1884, 164 *L.Ed.*2d 583 (2006) (holding similarly that person's custody status was readily determinable from review of court records relating to defendant's convictions).

Pursuant to our holding today, once the court finds that those statutory eligibility requirements are met, the maximum sentence to which defendant may be subject, for purposes of *Apprendi,* is the top of the extended-term range. Stated differently, the range of sentences, available for imposition, starts at the minimum of the ordinary-term range and ends at the maximum of the extended-term range. By recognizing that the top of the extended-term range is the "top" applicable to a persistent offender, we do not make mandatory a defendant's sentencing within the enhanced range. Rather, we merely acknowledge that the permissible range has expanded so that it reaches from the bottom of the original-term range to the top of the extended-term range. Where, within that range of sentences, the court chooses to sentence a defendant remains in the sound judgment of the court—subject to reasonableness and the existence of credible evidence in the record to support the court's finding of aggravating and mitigating factors and the court's weighing and balancing of those factors found. On appellate review, the court will apply an abuse of discretion standard to the sentencing court's explana-

tion for its sentencing decision within the entire range. *Dunbar's* reference to a finding of "need to protect the public" is not a precondition to a defendant's eligibility for sentencing up to the top of the discretionary extended-term range.

Moreover, just as we no longer have presumptive sentences as a starting point for a court's sentencing analysis, so too there will not be a presumptive starting point for a court's analysis within the broadened range encompassing the breadth of the original-term range and the available extended-term range. As noted when, in *State v. Natale,* 184 *N.J.* 458, 486, 878 *A.*2d 724 (2005), we eliminated presumptive terms from the sentencing process to avoid a Sixth Amendment violation, we expect that courts nonetheless will perform their sentencing function by using the traditional approach of finding and weighing aggravating and mitigating factors and imposing a sentence within the available range of sentences. That determination will be reviewed for reasonableness.

██ The court may consider the protection of the public when assessing the appropriate length of a defendant's base term as part of the court's finding and weighing of aggravating factors and mitigating factors.[6] The finding is not a necessary condition, however, to the court's determination *whether* defendant is subject to a sentence up to the top of the extended-term range. Thus, we rid our sentencing practice of any ambiguity suggestive of a Sixth Amendment transgression by means of a remedy that preserves what, we believe, the Legislature would prefer—keeping the exercise of sentencing discretion in the hands of courts, not juries. *See ibid.*

## V.

In defendant's sentencing, the court determined that defendant was eligible for an extended-term sentence using the *Dunbar*

---

[6] *See Dunbar, supra,* 108 *N.J.* at 91, 527 *A.*2d 1346 (noting that protection of the public relates to considerations of deterrence).

standard. Because that standard was utilized, the sentencing court necessarily determined that defendant met the statutory eligibility criteria for persistent-offender status, a finding that defendant does not dispute. Thus, defendant already has been determined to have met the standard that we now hold is all that must be present for purposes of identifying, as the top of his sentencing range, the maximum sentence permitted by the discretionary extended-term range. Accordingly, we remand defendant for re-sentencing, but only in respect of reconsideration of the appropriate sentence for defendant within the expanded range of sentences available from the bottom of the ordinary-term to the top of the extended-term range. The court must reconsider the applicable aggravating and mitigating factors and impose a sentence within the broadened range of sentences available consistent with this opinion.

Defendant can be re-sentenced by the court within the expanded range to which he was eligible, just as the defendant in *Natale* was allowed to be re-sentenced by the court to a new sentence above the former presumptive term without the need for jury findings as to aggravating factors. *See Natale, supra,* 184 *N.J.* at 492, 878 *A.*2d 724 (allowing re-sentencing remedy for defendant). In *Natale, supra,* we addressed judicial fact-finding in connection with the use of presumptive sentences. 184 *N.J.* at 487, 878 *A.*2d 724. We held that the Code made it "clear that, before any judicial factfinding, the maximum sentence that [could have been] imposed based on a jury verdict or guilty plea [was] the presumptive term" for the applicable sentencing range. *Id.* at 484, 878 *A.*2d 724. A sentence above the presumptive sentence simply was not available for imposition unless a sentencing court found aggravating factors to be present and to outweigh any mitigating factors. *Ibid.* We held, therefore, that because the Code permits a court to sentence above the presumptive based on a judicial finding of aggravating factors, the Code's sentencing system was "incompatible with *Apprendi, Blakely* and *Booker*" and violated the Sixth Amendment's right to jury trial. *Ibid.* We determined that elimination of presumptive sentences would best comport with

the intent of the Legislature because then the sentencing judge could engage in the fact-finding required by the Legislature with the entire range available for sentencing. *Id.* at 487, 878 *A.2d* 724. We ordered Natale's resentencing consistent with those revised sentencing procedures, including judicial fact-finding in respect of aggravating factors necessary to support any sentence over the entire range.[7] *Id.* at 490, 878 *A.2d* 724.

We import the *Natale* remedy here. In respect of defendant Pierce, the ordinary-term range of sentence was the maximum sentence applicable to him based on his conviction for armed robbery until the court determined that he satisfied the statutory criteria to be a persistent offender. With that judicial determination, which is permissible under the prior conviction exception recognized by *Blakely* and its progeny, the permissible range of sentences available in the court's discretion expanded up to a new maximum—the top of the extended-term range. As we have already explained, the fact-findings related to the statutory criteria are fact-findings that may permissibly be made by a court under *Apprendi* and *Blakely*. The additional judicial finding of "need to protect the public" is no different from the judicial findings as to aggravating factors, which we permitted the court to make on remand in *Natale* in connection with the court's imposition of a sentence higher than the old maximum represented as the former presumptive term. Defendant cannot claim a lack of notice. He knew that based on his prior record the prosecutor could seek to have him found to be a persistent offender under

---

[7] The *Natale* Court described that remedy as "hardly ... 'unexpected' or 'indefensible' in light of" *Blakely* and its progeny. *Id.* at 491–92, 878 *A.2d* 724. We rejected the argument that the defendant was being subjected retroactively to a different and higher range of sentence than that which applied to him and his conviction. *Id.* at 491, 878 *A.2d* 724. We noted that had a jury been substituted as the remedy to the Sixth Amendment violation present in our sentencing scheme, the maximum sentence that could be imposed through the jury's fact-finding (the top of the sentencing range) would be the same as under the remedy ordered by the Court—judicial fact-finding "unencumbered by the presumptive term." *Id.* at 492, 878 *A.2d* 724.

*N.J.S.A.* 2C:43–3(a) and to ask that he be sentenced within the discretionary extended-term range. Defendant's sentencing within the discretionary extended-term range on the basis of judicial, as opposed to jury, findings equates to our holding in *Natale* wherein we allowed the defendant to be sentenced to a period of incarceration above the presumptive term based on judicially found aggravating factors. No new range is being introduced into defendant's resentencing on remand. The extended-term range was available based on the juxtaposition of his current conviction and the court's findings as to his persistent offender status based on his prior convictions.

Contrary to the assertions of our concurring in part and dissenting in part colleagues, today's remedy does not subject defendant retroactively to a "new" statutory maximum that, in compliance with ex post facto principles, can only be imposed by a jury finding. We and our colleagues have a fundamental difference of opinion about *Dunbar*'s "protection of the public" finding. In our view, *Dunbar*'s finding never went to a persistent offender's *eligibility* for a discretionary extended-term sentence. Until *Apprendi* and *Blakely,* one would not have anticipated that *Dunbar*'s "protection of the public" additional consideration, adopted to guide a sentencing court's use of a discretionary extended-term range, might be considered impermissible from a Sixth Amendment perspective. No one would have thought it necessary to first acknowledge the "top" of the range before making any finding about "protection of the public." The "protection of the public" requirement, articulated in *Dunbar* and *Pennington,* was introduced for a distinct purpose and is, therefore, apart from the criteria necessary for the identification of the "top" of the range of sentences available for defendant.[8]  In sum, we see nothing "unex-

---

[8] We note further that the "protection of the public" finding is similar to other sentencing factors traditionally used by courts and unlike the finding involved in *Apprendi.* In *Apprendi, supra,* the Supreme Court noted that the hate crime statute's "purpose to intimidate" finding was more akin to, but not exactly "a

pected or indefensible" in our holding today that explains our extended-term sentencing procedures in light of *Apprendi* and *Blakely* and imposes our remedy on defendant in his re-sentencing. Moreover, defendant may benefit through the re-sentencing because the court may consider the full range of sentences available from the bottom of the ordinary-term range to the top of the extended-term range. Finally, we add that defendant may not be subjected to a sentence in excess of the one previously imposed. *See Natale, supra,* 184 *N.J.* at 496, 878 *A.*2d 724.

## VI.

The judgment of the Appellate Division in respect of defendant's sentence is reversed and the matter is remanded for further proceedings consistent with this opinion.

Justice ALBIN, dissenting in part and concurring in part.

A jury found defendant guilty of first-degree armed robbery and other crimes. The jury's verdict on the robbery charge authorized a maximum sentence of twenty years in state prison. Because defendant had at least two prior convictions, the sentencing judge had the discretion to impose an extended term of twenty years to life on the robbery charge, but only if he made a finding that an extended term was warranted for "the protection of the public." *See State v. Dunbar,* 108 *N.J.* 80, 527 *A.*2d 1346 (1987). Without that finding, the judge was bound to sentence defendant within the range authorized by the jury's verdict—ten to twenty years. Based on his finding that "the protection of the public" required the imposition of an extended term, the judge sentenced defendant to a forty-year term, a sentence double that authorized by the jury's verdict.

The United States Supreme Court has made clear that the Sixth Amendment jury trial guarantee prohibits a judge from imposing

---

core criminal offense 'element.' " 530 *U.S.* at 493, 120 *S.Ct.* at 2364, 147 *L.Ed.*2d at 457.

a sentence that exceeds the maximum term authorized by the jury's verdict based on a judicial finding of a fact, "[o]ther than the fact of a prior conviction." *Blakely v. Washington,* 542 *U.S.* 296, 301, 124 *S.Ct.* 2531, 2536, 159 *L.Ed.2d* 403, 412 (2004); *Apprendi v. New Jersey,* 530 *U.S.* 466, 490, 120 *S.Ct.* 2348, 2362–63, 147 *L.Ed.2d* 435, 455 (2000); *see also United States v. Booker,* 543 *U.S.* 220, 244, 125 *S.Ct.* 738, 756, 160 *L.Ed.2d* 621, 650 (2005). Here, the judge made the finding that the "need to protect public safety" required that defendant serve an extended term, and based on that finding, he imposed a sentence exceeding the statutory maximum authorized by the verdict. That judicial fact-finding patently violated the constitutional standard set forth in *Booker, Blakely,* and *Apprendi,* and therefore defendant's Sixth Amendment right to trial by jury.

To remedy that constitutional violation, the majority does not vacate the sentence and remand to allow a jury to determine whether the "protection of the public" warrants an extended term of up to forty years. Instead, the majority simply removes from the extended term statute the requirement imposed by this Court in *State v. Dunbar, supra,* 108 *N.J.* at 90–91, 527 *A.2d* 1346, that a "protection of the public" finding be made before the imposition of an extended term. Having excised that essential element from the extended term statute—an element that existed at the time defendant committed the crime—the majority then remands to a judge to sentence defendant again to a prison term up to twice that authorized by the jury's verdict. By that after-the-fact amendment to the extended term statute, enlarging the statutory maximum authorized by the jury's verdict to forty years,[1] the majority violates not only defendant's Sixth Amendment jury trial right, but also the *ex post facto* provisions of the United States

---

[1] Under the statute, a person given an extended term for a first-degree crime is subject to a period of incarceration between twenty years and life. *N.J.S.A.* 2C:43–7(a)(2). Because defendant cannot be resentenced to a term exceeding his initial sentence, *see ante* 188 *N.J.* at 173–74, 902 *A.2d* at 1206–07, he is subject to a maximum term of forty years.

and New Jersey Constitutions. Because the illusory victory that the majority hands to defendant contravenes the clear dictates of the Federal Constitution, I respectfully dissent.

## I.

### A.

In *Apprendi, supra,* the United States Supreme Court struck down New Jersey's "hate crime" statute, *N.J.S.A.* 2C:44-3(e) (repealed 2002), because the statute permitted—based solely on judicial factfinding—imposition of a sentence greater than that authorized by the defendant's guilty plea or a jury verdict, thus violating the Sixth Amendment jury trial guarantee. *See* 530 *U.S.* at 490-92, 120 *S.Ct.* at 2363-64, 147 *L.Ed.*2d at 455-56. The extended term statute invalidated in *Apprendi* is not materially different from the extended term statute before this Court today. New Jersey's former hate crime statute allowed a judge to sentence a defendant to a term one degree higher than the sentence authorized by a guilty plea or jury verdict if the judge found by a preponderance of the evidence that the defendant committed a crime " 'with a purpose to intimidate an individual or group of individuals' " for an invidious reason, such as race. *Id.* at 468–69, 120 *S.Ct.* at 2351, 147 *L.Ed.*2d at 442 (quoting *N.J.S.A.* 2C:44-3(e) (repealed 2002)).

The defendant in *Apprendi* pled guilty to two counts of second-degree possession of a firearm for an unlawful purpose. *Id.* at 469–70, 120 *S.Ct.* at 2352, 147 *L.Ed.*2d at 442. The second-degree charges carried a potential prison term of five to ten years. *Id.* at 470, 120 *S.Ct.* at 2352, 147 *L.Ed.*2d at 443. The trial judge determined that a preponderance of evidence supported a finding of racial animus and therefore imposed a twelve-year prison term—two years above the statutory maximum for a second-degree crime. *Id.* at 470–71, 120 *S.Ct.* at 2352, 147 *L.Ed.*2d at 443. In invalidating that sentence, the Supreme Court set forth the standard for determining whether a sentence complies with the

Sixth Amendment: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 *S.Ct.* at 2362–63, 147 *L.Ed.*2d at 455. As restated in *Blakely, supra,* "the [constitutional] 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." 542 *U.S.* at 303–04, 124 *S.Ct.* at 2537, 159 *L.Ed.*2d at 413–14.

## B.

In *Apprendi, supra,* based on a judicial finding of racial animus, the hate crime statute permitted a sentence one degree higher than that authorized by a guilty plea or jury verdict. *See* 530 *U.S.* at 468–69, 120 *S.Ct.* at 2351, 147 *L.Ed.*2d at 442. In this case, based on a judicial finding of "protection of the public," the extended term statute, *N.J.S.A.* 2C:44–3(a), permits a sentence one degree higher than that authorized by a guilty plea or jury verdict. *See N.J.S.A.* 2C:43–7(a). Viewing the two statutes together, I do not see how *N.J.S.A.* 2C:44–3(a) is any less offensive to the Sixth Amendment jury trial guarantee than the former hate crime statute. That this Court interpreted *N.J.S.A.* 2C:44–3(a) to require a "protection of the public" finding as a prerequisite for an extended term does not in any way alter the analysis. That was the applicable law at the time defendant committed his offenses. Moreover, "[i]n deciding the question of what facts must be subject to a jury finding, 'the relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?'" *State v. Natale,* 184 *N.J.* 458, 473, 878 *A.*2d 724 (2005) (quoting *Apprendi, supra,* 530 *U.S.* at 494, 120 *S.Ct.* at 2365, 147 *L.Ed.*2d at 457). For Sixth Amendment purposes, "protection of the public" is no less a "fact" than "racial animus" if a judge relies on that "fact" to impose a sentence higher than the one authorized by the jury's verdict.

In *State v. Dunbar, supra,* the Court set the standard for a trial judge's exercise of discretion when imposing a sentence under the persistent offender, extended term statute, *N.J.S.A.* 2C:44-3(a). 108 *N.J.* at 87-91, 527 *A.*2d 1346. Under that statute, a trial judge "may, on application by the prosecutor, sentence a first-, second-, or third-degree offender to an extended term ... if [he] finds that the defendant is ... a persistent offender." *Id.* at 87-88, 527 *A.*2d 1346. The Court recognized that if a judge determined that a defendant was eligible for an extended term based on prior convictions, he was "not able to look to the Code for an explicit standard by which [he] should exercise [his] discretion to impose the extended sentence." *Id.* at 89, 527 *A.*2d 1346.

To channel the discretion of the judge in a way compatible with the principles of the Code of Criminal Justice, the Court determined that it had to establish a standard to guide sentencing courts. Based primarily on its review of the legislative history of *N.J.S.A.* 2C:44-3, the Court decided that such an extended term may only be imposed if there is a judicial finding that the sentence is necessary for the protection of the public. *Id.* at 90-91, 527 *A.*2d 1346. The *Dunbar* standard was reaffirmed in *State v. Pennington,* 154 *N.J.* 344, 354, 712 *A.*2d 1133 (1998) ("The standard for determining whether to impose an extended term upon an eligible defendant is whether it is necessary for the protection of the public from future offenses by defendant through deterrence.").

## II.

By excising the protection-of-the-public finding as a prerequisite for the imposition of an extended term sentence under *N.J.S.A.* 2C:44-3(a), the majority's decision has judicially enlarged the range of defendant's sentence authorized by the jury's verdict and thus is an *ex post facto* law in violation of both the Federal and State Constitutions. *See* U.S. Const. art. I, § 10, cl. 1; *N.J. Const.* art. IV, § 7, ¶ 3. When defendant committed first-degree robbery, before any additional judicial factfinding, the only sen-

tence authorized by the jury's verdict was a ten- to twenty-year term. *N.J.S.A.* 2C:43–6(a)(1). The majority's decision now authorizes a sentence of ten years to life imprisonment without any additional factfinding. *See N.J.S.A.* 2C:43–7(a)(2).

If a statute "make[s] more burdensome the punishment for a crime, after its commission," then it is an unconstitutional *ex post facto* law. *State v. Muhammad,* 145 *N.J.* 23, 56, 678 *A.*2d 164 (1996) (citing *Beazell v. Ohio,* 269 *U.S.* 167, 169–70, 46 *S.Ct.* 68, 68–69, 70 *L.Ed.* 216, 217 (1925)). The prohibition is meant to ensure that individuals receive "fair warning" of the penal effect of legislative enactments. *Weaver v. Graham,* 450 *U.S.* 24, 28–29, 101 *S.Ct.* 960, 964, 67 *L.Ed.*2d 17, 23 (1981).

To qualify as *ex post facto,* a law "must apply to events occurring before its enactment" and "must be more onerous than the prior law." *State v. Natale, supra,* 184 *N.J.* at 491, 878 *A.*2d 724 (internal quotation marks omitted). *Ex post facto* violations are not restricted to legislative enactments, but may also result from judicial actions. *Rogers v. Tennessee,* 532 *U.S.* 451, 456–57, 121 *S.Ct.* 1693, 1697–98, 149 *L.Ed.*2d 697, 704–05 (2001). Retroactive judicial enlargement of a criminal statute's application can violate the prohibition when it is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue." *Id.* at 457, 121 *S.Ct.* at 1698, 149 *L.Ed.*2d at 705 (internal quotation marks omitted).

By eliminating the *Dunbar* standard as an essential element of the sentencing determination under *N.J.S.A.* 2C:44–3(a), the Court has judicially enlarged defendant's sentencing range—imposing a totally new statutory maximum authorized by the jury's verdict that did not exist at the time he committed the robbery. *See Collins v. Youngblood,* 497 *U.S.* 37, 44, 110 *S.Ct.* 2715, 2720, 111 *L.Ed.*2d 30, 40 (1990) (stating that *ex post facto* prohibition applies to enhancement of penalty for crime). The trial court imposed an extended sentence on defendant "[b]ased upon the defendant's prior record and the need to protect public safety." Now, with the protection of the public factor gone, and based solely on the

judicial finding of past convictions, the new statutory maximum for defendant is a forty-year sentence. The Court's modification of the statute "make[s] more burdensome the punishment for a crime, after its commission," and thus operates as an *ex post facto* law. *See Muhammad, supra,* 145 *N.J.* at 56, 678 *A.*2d 164. Moreover, this change in the law was "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue." *See Rogers, supra,* 532 *U.S.* at 457, 121 *S.Ct.* at 1698, 149 *L.Ed.*2d at 705 (internal quotation marks omitted); *see also State v. Martin,* 110 *N.J.* 10, 15, 538 *A.*2d 1229 (1988) (describing "drastic consequences" of imposition of extended term that had potential of doubling maximum sentence that could be imposed on defendant).

In *Natale, supra,* this Court eliminated the presumptive sentencing terms. 184 *N.J.* at 487, 878 *A.*2d 724. The *Natale* Court further held that elimination of the presumptive sentencing terms could "hardly be characterized as 'unexpected' or 'indefensible' in light of" *Apprendi* and its progeny. *Id.* at 491–92, 878 *A.*2d 724. The *Natale* Court's elimination of presumptive sentencing is far different than the judicial alteration made in this case. Before the *Apprendi* line of cases, every defendant knew that the sentencing range for armed robbery was ten to twenty years based on a judge's weighing of the sentencing factors, and that if he had two prior convictions a judge first had to make a "protection of the public" finding to justify increasing the sentencing range up to life imprisonment. *See id.* at 492, 878 *A.*2d 724. Here, unlike in *Natale,* the majority removes from the law applicable when defendant committed the offense an essential fact that had to be established before defendant could be sentenced to an extended term. The Court's determination to eliminate that fact requirement as a precondition to establishing the top of the sentencing range can be viewed as "unexpected" and not defensible based on our prior case law.

Accordingly, the decision issued today should not be applied to defendant. Defendant was sentenced under the *Dunbar* standard,

which applied at the time he committed his offenses. He should be resentenced under that standard and receive an extended term only if a jury determines that an extended sentence is necessary for the "protection of the public." That remedy will comport not only with the Sixth Amendment right to trial by jury, but also the constitutional prohibition against *ex post facto* laws.

## III.

Despite its characterization to the contrary, the majority has transformed a discretionary extended term statute, *N.J.S.A.* 2C:44-3(a), into something akin to the mandatory extended term drug statute, *N.J.S.A.* 2C:43-6(f), which the Court found did not offend the Sixth Amendment in *State v. Thomas*, 188 *N.J.* 139, 902 *A.*2d 1185 (2006). *See ante* 188 *N.J.* at 169-70, 902 A.2d at 1204-05. Once the sentencing judge determines that a defendant has committed the predicate crimes enumerated under *N.J.S.A.* 2C:44-3(a), the sentencing range automatically extends one degree higher. *See N.J.S.A.* 2C:43-7(a).

Converting a discretionary sentencing scheme into a mandatory one is a drastic alteration of the extended term statute. I concur, however, in the majority's remedy, provided it is applied prospectively. Prospective application will not give rise to an *ex post facto* claim. I concur because "[i]t is our task to conform the Code to the Constitution in a way that the Legislature would have intended." *Natale, supra,* 184 *N.J.* at 485, 878 *A.*2d 724. In crafting a remedy in *Natale,* we stated that "the Legislature would not have wanted us to substitute jurors for judges as the factfinders determining the applicability of aggravating sentencing factors." *Id.* at 486, 878 *A.*2d 724. The same reasoning applies to extended term sentencing. In light of the "strong judicial role in sentencing," *State v. Roth,* 95 *N.J.* 334, 352, 471 *A.*2d 370 (1984), the Legislature never intended to substitute juries for judges in making a determination whether the protection of the public required an extended term. The prospective application of the majority's remedy comports with the Sixth Amendment and will

leave intact the legislative goal of uniform sentencing under the Code. The remedy chosen not only complies with the dictates of *Blakely, Booker,* and *Apprendi,* but also best achieves the Legislature's purpose in enacting the Code.

## IV.

Because I believe that the majority's remedy as applied to defendant violates both the Sixth Amendment jury trial guarantee and the *ex post facto* provisions of the Federal and State Constitutions, I respectfully dissent.

*For reversal and remandment*—Chief Justice PORITZ and Justices LaVECCHIA, ZAZZALI and RIVERA–SOTO—4.

*Dissent in part/concur in part*—Justices ALBIN and WALLACE—2.