**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2111-15T2

STATE OF NEW JERSEY,

       Plaintiff-Respondent,

v.

MICHAEL M. WINTERS,
a/k/a KING ALLAH, KING ALLAH,
KINGNAZIM ALLAH, NAZIM A. KING,
WINTERS M. MICHAEL, DAVID SMITH,
MIKE WINTERS, DARNELL JON, and
MICHAEL WINTERSMARVIN,

       Defendant-Appellant.

_____

Argued May 9, 2017 — Decided August 3, 2017

Before Judges Messano and Grall.

On appeal from the Superior Court of New
Jersey, Law Division, Camden County,
Indictment No. 13-09-2933.

John Douard, Assistant Deputy Public
Defender, argued the cause for appellant
(Joseph E. Krakora, Public Defender,
attorney; Mr. Douard, of counsel and on the
brief).

Kevin J. Hein, Assistant Prosecutor, argued
the cause for respondent (Mary Eva
Colalillo, Camden County Prosecutor,
attorney; Linda A. Shashoua, of counsel and
on the briefs).

Appellant filed a pro se supplemental brief.

PER CURIAM

The grand jurors for Camden County charged defendants Michael M. Winters and Matilda Marshall with committing five crimes against one victim, Ms. Colon. Defendant was tried a year after Marshall was sentenced, and the State moved to dismiss the fifth count of the indictment, charging receiving stolen property, N.J.S.A. 2C:20-7(a), prior to trial. The jury found defendant guilty of first-degree kidnapping and conspiring to commit that crime, N.J.S.A. 2C:13-1(b)(1), N.J.S.A. 2C:5-2, and of robbery and conspiring to commit that crime, N.J.S.A. 2C:15-1(a)(1)-(2), N.J.S.A. 2C:5-2.

At sentencing, the court granted the State's motion to dismiss the fifth count and the State's motion to have defendant sentenced as a persistent offender pursuant to N.J.S.A. 2C:44-3(a). The court merged defendant's conspiracy convictions with his convictions for kidnapping and robbery and imposed an extended term sentence for first-degree kidnapping, forty-five years' imprisonment, and a concurrent ten years' imprisonment for second-degree robbery. Both sentences are subject to terms of parole ineligibility and supervision required by N.J.S.A. 2C:43-7.2. The court also imposed the appropriate monetary assessments and penalties, N.J.S.A. 2C:43-3.1 to -3.3.

On appeal, defendant's counsel raises the following points:

POINT I

EVEN WHEN VIEWED IN THE LIGHT MOST FAVORABLE
TO THE STATE, THE EVIDENCE DID NOT ESTABLISH
BEYOND A REASONABLE DOUBT THAT MR. WINTERS
FAILED TO RELEASE COLON UNHARMED IN A SAFE
PLACE, AND HIS MOTION FOR JUDGMENT OF
ACQUITTAL OF FIRST-DEGREE KIDNAPPING SHOULD
HAVE BEEN GRANTED. U.S. CONST., AMEND. XIV;
N.J. CONST. (1947), ART. I, ¶ 10.

POINT II

BECAUSE THE JUDGE FAILED TO CONDUCT A "PROBING
INQUIRY" OF THE JURY IN LIGHT OF THE
PROSECUTOR'S ACKNOWLEDGEMENT THAT, WHILE
OUTSIDE THE COURTROOM THE MORNING OF THE
TRIAL, A PUBLIC DEFENDER NOT INVOLVED IN THIS
TRIAL MADE PREJUDICIAL COMMENTS WITHIN THE
HEARING OF A JUROR, MR. WINTERS WAS DENIED HIS
CONSTITUTIONAL RIGHTS TO A FAIR TRIAL. (NOT
RAISED BELOW)

POINT III

THE AGGREGATE FORTY-FIVE-YEAR SENTENCE WITH
EIGHTY-FIVE PERCENT PAROLE INELIGIBILITY IS
MANIFESTLY EXCESSIVE AND SHOULD BE REDUCED.

In his pro se supplemental brief, defendant argues:

POINT IV

THE STATE ERRED IN ALLOWING STATE WITNESS
MARCIA COLON TO TESTIFY FALSELY AND
INCONSISTENTLY AGAINST THE DEFENDANT DURING
DEFENDANT'S TRIAL, IN WHICH HAD PREJUDICED THE
JURY TO RENDER A GUILTY VERDICT VIOLATING MR.
WINTERS 6TH AMENDMENT RIGHT TO A FAIR TRIAL.

POINT V

THE COURTS ERRED IN PROHIBITING DEFENDANT'S
ATTORNEY . . . THE OPPORTUNITY TO QUESTION THE
DETECTIVES DAVID SEYBERT AND DETECTIVE RANDY
SMITH REGARDING MS. COLON'S FIRST TWO
STATEMENTS AND THE INCONSISTENCY OF THESE TWO
STATEMENTS FOR THEY HAD NOT BELIEVED HER.

I.

Because the question of possible taint of the jury empaneled arose prior to trial, we address that claim before discussing the evidence supporting defendant's conviction and sentence.

The jurors were selected and sworn on June 9, and the court directed them to report for trial at 10:00 a.m. the next day. The next morning, before trial commenced and in the presence of defense counsel and on the record, the prosecutor told the court that at about 9:00 a.m. an attorney not involved in this case made remarks about defense counsel to the prosecutor in the hallway near the courtroom and the elevator. The attorney who made the comments was present when the prosecutor reported the incident.

The prosecutor was concerned that a member of this jury might have overheard the conversation, because one woman was possibly close enough. He described the woman's distinctive

outfit and said he was not certain whether she was serving in this case or another being tried on the same floor that day.

The court knew another judge was conducting a jury trial and had directed those jurors to report at 9:00 a.m. The prosecutor, accompanied by a court aide, went to the other courtroom. A civil trial was underway, and the woman the prosecutor had seen was in the jury box.

On receipt of that information, the court concluded there was no need to take additional action. The attorneys agreed and acknowledged the court should do nothing more than share the information with the judge conducting the other trial. Thus, the trial court, defense counsel and the prosecutor who conscientiously reported the potential problem, were all satisfied there was no reason to suspect a member of this jury had been exposed to comments having the capacity to influence the verdict. State v. Loftin, 191 N.J. 172, 179-60 (2007).

Defendant now contends the court's response was insufficient to protect his right to a trial before an impartial jury untainted by extraneous information. We see absolutely no reason to even suspect a juror serving in this case was tainted. Defendant's objection, which is contrary to the position defendant took in the trial court and raised for the first time

on appeal, has insufficient merit to warrant any additional discussion.  R. 2:11-3(e)(2).

## II.

The evidence presented at trial can be summarized as follows.  Ms. Colon planned to go to work on November 15, 2012. She left her house in Camden wearing her uniform, a jacket and coat, intending to take the 6:00 a.m. bus to a hotel in Cherry Hill where she worked as a housekeeper.  It was still dark and cold when she arrived at the bus stop, and the corner store behind the stop was still closed and gated.  Defendant and Marshall, whom Colon did not know, were nearby.  No one else was around.

Colon heard defendant say, "there she is."  He then stood by and watched, as Marshall approached Colon and asked, "Where's my money."  Marshall grabbed Colon by the neck, pushed her against the store's gate and put her hand inside Colon's clothing while repeating her demand for money.  Failing to find any, Marshall pushed Colon toward a car and put her in its back seat.  Marshall then sat in the front seat, and defendant drove away.  Although neither defendant nor Marshall had uttered a threat, Colon was afraid they were going to beat her to death. As defendant drove, Colon cried, and Marshall told her to "shut up."

Defendant drove until he reached a secluded railroad bridge and stopped. At that point, Marshall moved to the back seat, ordered Colon to take off her clothes and searched again when Colon was wearing only underwear. Marshall recovered nothing other than a food stamp card, ID, keys and $.50. Using the car's rearview mirror, defendant had watched the events occurring in the backseat.

After the final search, Marshall returned to the front seat. She and defendant told Colon to get dressed, and defendant drove from the railroad bridge to a gas station that had a convenience store. This establishment was not insolated; there were men standing outside in the parking lot when defendant parked by the gas pumps. At that point, Colon had dressed, and defendant had taken the belongings Marshall seized and, with the exception of the $.50, returned them to Colon. After parking, defendant left the car and went into the store.

When defendant left the car, Marshall re-took Colon's food stamp card from her and asked Colon for the PIN needed to use it. Colon complied, and Marshall left the car, went into the convenience store and made several attempts to access the ATM.

Just seconds after Marshall left the car, Colon, thinking it was her chance to get away, got out of the car. Colon left wearing her short-sleeved uniform, carrying her jacket and left

her coat behind. According to Colon, the men asked where she was going, but, thinking they would not help her, she walked away. Although she walked at first, she started to run and kept running until a woman she did know took her in and called the police.

At the station, defendant, who returned to the car about thirty seconds after Colon left it, looked at the car, went back to the store and motioned to Marshall, who was still at the ATM. They left the store, got into the car and sped away.

The gas station's cameras had recorded the events at the pumps and in the convenience store. The recording, which showed the time of the events as they were occurring, was introduced into evidence at trial and shown to the jury.

The police, using the video evidence, created a "Wanted Poster" bearing images of the codefendants and the car. The next day an officer spotted the parked car and defendant and Marshall, who were sitting in it. They were arrested, and Colon subsequently selected their photos from separate arrays.

The officers involved in the investigation that followed testified at trial. Defense counsel cross-examined them about warnings they gave Colon to secure her testimony, such as removal of her children from her care and prosecution if she lied or changed her account of the incident. The court

precluded the defense from eliciting the officers' opinions on Colon's veracity.  But, in addition to cross-examination about the officers' statements, the court permitted cross-examination probing differences between Colon's trial testimony and pre-trial statements.

### III.

The most significant issue defendant raises on appeal is the challenge to the court's denial of his motion for a directed verdict on the first-degree kidnapping.  In reviewing a directed verdict, this court applies the same standard as the trial court.  Courts view the evidence in the light most favorable to the State, give the State the benefit of all reasonable inferences and determine whether "a reasonable jury could find guilt of the charge beyond a reasonable doubt."  State v. Reyes, 50 N.J. 454, 458-59 (1967); see Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1973).

Defendant's motion for a directed verdict was general and not tied to an element of any crime at issue.  On appeal, defendant argues the State failed to present adequate evidence to establish the element that distinguishes kidnapping in the first and second degree, that is, the defendant did not "release[] the victim unharmed and in a safe place." N.J.S.A. 2C:13-1(c).

In order to prove this element in a case involving "a kidnapper who has released the victim prior to his or her apprehension, the State must prove beyond a reasonable doubt that the victim had been harmed or had not been released in a safe place." State v. Sherman, 367 N.J. Super. 324, 330 (App. Div.) (emphasis added), certif. denied, 180 N.J. 356 (2004). Thus, the State's evidence need not be adequate to permit a reasonable jury to find that a released victim was harmed and released in an unsafe place. Ibid. Proof of either suffices.

More important, under Sherman, the question of "harm" to the victim and the "safe[ty]" of the place where the victim becomes free are in issue only when a defendant "has released" the victim. Ibid. Defendant acknowledges that proposition by arguing "Colon was effectively released . . . in a safe place." (emphasis added).

In this case, the State's evidence, considered with the benefit of all favorable inferences, was adequate to permit a reasonable jury to find defendant had not "released" Colon because she escaped. That is, the evidence was adequate to establish, beyond a reasonable doubt, that defendant did not effectively "abandon[] any attempt to continue to confine her." State v. Federico, 103 N.J. 169, 172 (1986) (citing State v. Federico, 198 N.J. Super. 120, 126 (App. Div. 1984)).

10

Resolution of that factual dispute — abandonment of control versus escape — was for the jurors. Federico, supra, 198 N.J. Super. at 125-26.

Considered collectively, Colon's testimony, if believed, and the video provided adequate to prove Colon escaped before defendant abandoned control. Working together, the codefendants took Colon from the bus stop, put her in a car, drove her to an isolated place, compelled her to remove her clothes and took her belongings. Thereafter, they drove her to a gas station and maintained that control. Marshall stayed with Colon when defendant went into the gas station's store, and Colon left the car only seconds after Marshall left and just thirty seconds before defendant returned to the car.

A jury could determine that Colon's leaving the car without her coat and walking away before starting to run was not behavior one would expect from a person free to come and go at will. And the jury could conclude it was consistent with the behavior of a person attempting to sneak away and succeeding. The video gave the jury the opportunity to assess Colon's behavior. More important, the video gave the jury the opportunity to determine whether defendant's demeanor and behavior upon discovering Colon had left was consistent with the

surprise and alarm of a captor who had lost control or with the indifference of a captor who had abandoned control.

Viewed in the light most favorable to the State, the evidence permitted a finding of guilt on first-degree kidnapping based on defendant's failure to release the victim.

We have addressed defendant's second point, possible tainting of the jury, in Part I of this opinion. No additional comment is warranted.

Turning to Points IV and V raised in defendant's pro se brief, we discern no error. The court properly barred questions eliciting the officers' opinions on Colon's credibility, because credibility is exclusively within the province of the jurors and a lay witness's opinion on that topic is inadmissible. State v. Frisby, 174 N.J. 583, 593-94 (2002); accord State v. McLean, 205 N.J. 438, 453 (2011) (emphasizing the cases cited therein).

Defendant's claim concerning the court's allowing false testimony has no merit. There is no evidence suggesting the prosecutor or the officers knew Colon's testimony and statements were false, as opposed to inconsistent, and defense counsel's vigorous cross-examination highlighted the inconsistencies. Moreover, the court directed the jurors to consider the impact of the officers' arguably coercive statements. The court instructed the jurors to consider "statements of other witnesses

12

or acts of the witnesses and others, disclosing motives that the witness may have had to testify as she did."  The arguments presented in Points IV and V have insufficient merit to warrant additional discussion.  R. 2:11-3(e)(2).

There is no reason to disturb defendant's sentence.  He urges us to conclude the forty-five year extended term sentence for first-degree kidnapping is manifestly excessive.

Appellate review of a sentence is "governed by an abuse of discretion standard."  State v. Blackmon, 202 N.J. 283, 297 (2010).  This court may not substitute its judgment for that of the trial court.  Ibid.  The reviewing court considers:  (1) "whether the correct sentencing guidelines . . . have been followed;" (2) "whether there is substantial evidence in the record to support the findings of fact upon which the sentencing court based the application of those guidelines;" and (3) "whether in applying those guidelines to the relevant facts the trial court clearly erred by reaching a conclusion that could not have reasonably been made upon a weighing of the relevant factors."  State v. Roth, 95 N.J. 334, 365-66 (1984).

Defendant relies on State v. Dunbar, 108 N.J. 80 (1987), which set forth a "process to discretionary enhanced-term sentencing" of persistent offenders, pursuant to N.J.S.A. 2C:44-3(a).  But before defendant was sentenced, the Court revised the

A-2111-15T2

Dunbar-process to comply with Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) and Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). State v. Pierce, 188 N.J. 155, 165-69 (2006). Although defendant relies on Dunbar, Pierce controls.

Under Pierce, the court first determines whether the "defendant's criminal record of convictions" makes him eligible. Id. at 168. If the defendant is eligible, the court imposes a sentence within a range that begins with the minimum ordinary term and ends with the maximum extended term. Ibid. To select the appropriate sentence within the range, the court must assess the aggravating and mitigating factors and, in that context, consider the need for "protection of the public." Ibid.

Under Dunbar, courts were directed to consider whether protection of the public necessitated an extended term sentence based on persistent offending when determining a defendant's eligibility for an extended term. 108 N.J. at 164-65. In Pierce, the Court stressed that "a finding of 'need to protect the public' is not a precondition to a defendant's eligibility for sentencing up to the top of the discretionary extended-term range." 188 N.J. at 170. Necessity is a factor the Court "may consider" with the aggravating and mitigating factors. Ibid.

14

In this case, the trial court complied with the first and second steps of Pierce. The court identified the minimum sentence for first-degree kidnapping, which is fifteen years, N.J.S.A. 2C:13-1, and the maximum extended-term sentence for first-degree kidnapping, which is "life imprisonment," N.J.S.A. 2C:43.7(a)(1). The trial court then identified the applicable aggravating and mitigating factors and the facts he relied upon in finding aggravating factors specified in N.J.S.A. 2C:44-1(a)(3), (6) and (9), and mitigating factors specified in N.J.S.A. 2C:44-1(b)(2), (4) and (8).

The court did not find the mitigating factor that applies when "[t]he defendant's conduct neither caused nor threatened serious harm," N.J.S.A. 2C:44-1(b)(1), and explained that "[a]nytime a person is violently removed and . . . kept away from their normal activities by being forcibly moved from part to part, there's a risk of serious crime." That determination was not an impermissible double-counting of an element to impose a sentence at the high-end of the range, as defendant argues. See State v. Pineda, 119 N.J. 621, 627 (1990) (discussing double-counting). Here, the court determined this mitigation based on risk of serious harm did not favor a sentence at the lower end of the permissible range.

Notably, the court did not find the first aggravating factor, which concerns the nature and circumstances of the offense and the defendant's role in its commission, N.J.S.A. 2C:44-3(a)(1). Instead, the court found mitigating factor (2), which applies when the defendant before the court "did not contemplate that his conduct would cause of threaten serious harm." N.J.S.A. 2C:44-1(b)(1).

The trial court's consideration of the aggravating and mitigating factor cannot be viewed as anything other than a thorough and thoughtful exercise of sentencing discretion in conformity with the law. It is not an abuse of that discretion.

Defendant's argument focuses on a comment the court made during defendant's allocution on defendant's role in removing Colon from the bus stop to the backseat of the car. The judge did not rely on that description in explaining the factual basis for the sentence. Accordingly, even if we found the court's recollection of the testimony on the point inaccurate, we could not conclude that it had some undisclosed impact on the court's carefully articulated sentencing determination.

Relying on Dunbar, defendant argues that the court, having determined to sentence defendant as a persistent offender, erred in considering his criminal history in selecting the duration of his extended-term sentence. But, as Pierce explains, the

16 A-2111-15T2

"'necessity to protect the public' . . . involves an evaluation of the 'entire person of the defendant before the sentencing court'" and is properly considered in selecting a sentence within the broad extended-term range, not as it was considered under <u>Dunbar</u> in deciding the defendant's eligibility for an extended term sentence. <u>Pierce</u>, 188 <u>N.J.</u> at 167 (quoting <u>Dunbar</u>, supra, 108 <u>N.J.</u> at 91).

Defendant also contends the court double-counted the convictions that qualifies him for this discretionary extended term. Not so. In finding defendant eligible for an extended term, the court relied on an August 17, 1995 conviction for possession of CDS and on a January 7, 2011 conviction for terroristic threats. In finding aggravating factor (6), the court considered defendant's third degree crimes for drugs (defendant had at least three convictions for third-degree CDS offenses after his 1995 conviction), and his convictions for possession of a handgun, resisting arrest, burglary, shoplifting and eluding. Although the court mentioned "terroristic threats," the court immediately said, "I'm sorry, I'm not considering the terroristic threat[.]"

Defendant's sentence was imposed in conformity with statutory guidelines as interpreted by the Supreme Court and is supported by the evidence adduced at trial and defendant's

strikingly lengthy criminal record.  His lengthy sentence is neither arbitrary nor shocking to the judicial conscience.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2111-15T2