**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1649-17T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JOSE RIOS, a/k/a
JOSE R. RIOS, JOSE R.
RIOS, JR.,

     Defendant-Appellant.

_____

Submitted February 3, 2020 – Decided March 9, 2020

Before Judges Messano and Ostrer.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment Nos. 14-03-0259, 14-06-0753 and 16-02-0237.

Joseph E. Krakora, Public Defender, attorney for appellant (Kevin G. Byrnes, Designated Counsel, on the brief).

Christopher L.C. Kuberiet, Acting Middlesex County Prosecutor, attorney for respondent (David Michael Liston, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

A Middlesex County grand jury indicted defendant Jose Rios and two others, Yamil Rivera-Trinidad and Hector Amengual, for an armed home-invasion robbery and related offenses that occurred on February 28, 2014, in New Brunswick. The grand jury indicted defendant alone for events that occurred on March 13, 2014, when police arrested him in Somerset, and charged defendant in those counts with: second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count fourteen); fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2) (count fifteen); fourth-degree obstructing administration of law, N.J.S.A. 2C:29-1 (count sixteen); third-degree hindering one's own apprehension, N.J.S.A. 2C:29-3(b)(1) (count seventeen); and fourth-degree possession of a defaced firearm, N.J.S.A. 2C:39-3(d) (count eighteen). Defendant was tried alone; Amengual, who had earlier entered into a plea agreement with the State, testified at trial.

The jury acquitted defendant of all crimes allegedly occurring on February 28, 2014 but convicted him of the five remaining counts. The prosecutor sought a discretionary extended-term sentence pursuant to N.J.S.A. 2C:44-3(a). The judge granted the motion finding defendant was a persistent offender under the statute and imposed a thirteen-year term of imprisonment on count fourteen,

with a six-year period of parole ineligibility. She imposed concurrent maximum ordinary terms of imprisonment on the remaining counts.[1]

On appeal, defendant raises the following points:

POINT I

THE WARRANTLESS SEARCH OF THE DEFENDANT'S RESIDENCE AND HIS NEIGHBOR['S] RESIDENCE WAS ILLEGAL BECAUSE THE POLICE LACKED EXIGENT CIRCUMSTANCES.

POINT II

THE TRIAL COURT SHOULD HAVE ENTERED A JUDGMENT OF ACQUITTAL ON THE CHARGE OF HINDERING APPREHENSION BY CONCEALING OR SUPPRESSING EVIDENCE. (Not Raised Below)

POINT III

POLICE OPINIONS THAT THE DEFENDANT CONSTRUCTIVELY POSSESSED THE FIREARM FOUND IN THE NEIGHBOR['S] RESIDENCE WERE IMPROPERLY CONVEYED TO THE JURORS. (Not Raised Below)

POINT IV

THE SENTENCE IS EXCESSIVE.[2]

---

[1]  The judge also ordered that the sentences run concurrently to sentences imposed on two other indictments.

[2]  We have omitted the subpoints of this argument.

A-1649-17T2

We have considered these arguments in light of the record and applicable legal standards. We affirm.

I.

M.M., who lived in California, was in New Jersey visiting her daughter when Amengual and, allegedly, defendant forcibly entered the apartment, assaulted M.M. with a gun and bat, and stole jewelry and other items. Approximately two weeks later, M.M.'s daughter told police that her mother saw one of the perpetrators. M.M. identified Amengual from a photo. After waiving his Miranda[3] rights, Amengual confessed and identified defendant as the second man involved.

Amengual testified at trial that the gun belonged to defendant and had no serial number. He said that he gave the gun back to defendant during the course of the robbery. Through further investigation, police were able to locate defendant's residence. As we explain more fully below, police entered defendant's apartment and saw a hole in the ceiling. Believing defendant crawled through a common attic space, police entered a neighboring apartment. Inside, the neighbor signaled police toward her kitchen, where they found defendant hiding in a corner. Later, police found a gun, which Amengual

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

identified as the one used by the men during the robbery and assault of M.M., inside a garbage can in the kitchen. Defendant provided a videotaped statement to the police in which he admitted driving the two other men to the apartment but denied involvement in the home invasion or possession of the gun.

## II.

The judge conducted a pre-trial evidentiary hearing on defendant's motion to suppress at which Detective Gregory Morris of the Middlesex County Prosecutor's Office was the only witness.[4] From prior investigative reports filed by New Brunswick police, Morris was familiar with details of the home-invasion robbery. Morris detailed the videotaped statement he took from Amengual, in which Amengual implicated defendant and said he was a member of the Latin Kings gang. Some of the videotaped statement was played for the judge during the hearing. Morris testified that at 3:48 a.m. on March 13, 2014, the deputy first assistant prosecutor authorized the issuance of an arrest warrant for defendant.

Morris and other officers attempted to locate defendant at various locations before going to an address in an apartment complex in Somerset at

---

[4] The judge conducted a hearing on the admissibility of defendant's statement at the same time.

approximately 7:45 a.m. Morris described each building in the complex as having four separate entrances with apartments at the ground level and above on both sides of the building. Morris was concerned for his and the other officers' safety, since they were investigating an armed home invasion and defendant purportedly was armed. After knocking repeatedly on the door to Apartment 114A, Morris saw defendant in the apartment window. Defendant refused to answer the door and, other officers in the rear of the building reported seeing defendant in the window holding a baby.

Morris used the police vehicle's public address system to urge defendant to surrender, but he refused. Morris heard "loud bangs" coming from the apartment and grew concerned that defendant was "barricading" himself in the premises. The officers contacted the building superintendent who supplied the officers with a passkey, which they used to enter Apartment 114A. At the top of a flight of stairs, the officers saw another individual, not defendant, holding the baby. However, when they went up the stairs and entered the apartment proper, defendant was not inside. The officers observed two holes in the ceiling and surmised defendant escaped through an attic space.

Once again using a passkey supplied by the superintendent, the officers entered Apartment 113A, which was in the same building and shared a common

attic space with Apartment 114A. They saw a hole in the ceiling. A resident of the apartment signaled officers toward the kitchen. There, the officers found defendant crouched in the back corner. After defendant was taken into custody, police obtained consent and searched Apartment 113A. They discovered a .40 caliber handgun with a defaced serial number inside the kitchen garbage can.

The judge denied defendant's motion to suppress the seizure of the gun. In a written statement of reasons, the judge found Morris was a "credible witness." She determined warrantless entry of Apartment 114A was "justified." The judge reasoned the officers knew defendant was affiliated with a known dangerous gang, and that defendant was likely in possession of a weapon. She found that police saw defendant in the apartment and heard a baby's cries and loud bangs emanating from within. The judge noted "the urgency of the situation, the seriousness of the crimes being investigated . . . and [the] threat that evidence would be destroyed or lost or that the physical well-being of persons inside the apartment would be endangered[.]" The judge concluded that "the existence of such exigent circumstances provided an objectively reasonable basis to support the officer[s'] entry into the home."

The judge further found "that no search was conducted at the time of [d]efendant's arrest[,]" but the officers obtained valid consent to search from the

"owner/resident" of Apartment 113A. The judge concluded defendant "lack[ed] standing to assert that the search recovering the handgun was presumptively invalid."

Before us, defendant argues that police had no right to enter his apartment without a warrant because there was no exigency justifying the warrantless entry. Of course, defendant fails to acknowledge that nothing was seized during the entry into apartment 114A. The seizure of the gun from Apartment 113A occurred after valid consent was obtained. Moreover, the judge correctly found that defendant lacked standing to challenge the seizure of any items from that apartment, whether pursuant to validly obtained consent or otherwise, because defendant was obviously a trespasser. See State v. Randolph, 228 N.J. 566, 587 (2017) (noting that a defendant lacks standing to challenge the legality of a search if police have "an objectively reasonable basis to believe [the defendant] was a trespasser[.]" (alteration in original) (quoting State v. Brown, 216 N.J. 508, 535 (2014))).

Defendant fails to make any argument regarding the purported legal import that the warrantless entry of Apartment 114A had upon the actual seizure of the handgun from Apartment 113A. We assume defendant's contention is that

the improper warrantless entry of Apartment 114A provided information —

holes in the ceiling — that tainted the officers' later entry of Apartment 113A.

Defendant cites no authority for the proposition that any taint of illegality

from the entry into Apartment 114A could bestow standing on him to challenge

seizure of the gun. Moreover, since the issue was never briefed, we could justly

ignore any argument seeking to connect the two events. See State v. Amboy

Nat'l Bank, 447 N.J. Super. 142, 148 n.1 (App. Div. 2016) (noting an issue not

briefed is deemed waived). However, for the sake of completeness, we reject

the argument that the officers' entry into Apartment 114A was unjustified and

constitutionally infirm.

The State contended, and the judge accepted, that police entered

defendant's apartment armed with adequate probable cause to arrest him.

Defendant does not dispute that conclusion. The judge also accepted the State's

argument that a warrantless entry was justified by the exigencies presented by

the totality of the circumstances. We agree.

"Despite the existence of probable cause to arrest defendant, a showing of

exigent circumstances was required in order to comply with the Fourth

Amendment, specifically 'the exigencies of the situation' must make a

warrantless home arrest 'imperative.'" State v. Walker, 213 N.J. 281, 291 (2013)

(quoting State v. Bolte, 115 N.J. 579, 584 (1989)).  Consideration of the exigent circumstances exception "demands a fact-sensitive, objective analysis."  Id. at 292 (quoting State v. Deluca, 168 N.J. 626, 632 (2001)).

> [S]ome factors to be considered in determining whether law enforcement officials faced such circumstances are the urgency of the situation, the time it will take to secure a warrant, the seriousness of the crime under investigation, and the threat that evidence will be destroyed or lost or that the physical well-being of people will be endangered unless immediate action is taken.
>
> [State v. Johnson, 193 N.J. 528, 552–53 (2008) (citing DeLuca, 168 N.J. at 632–33).]

The State must also establish that the exigent circumstances are not police-created.  Walker, 213 N.J. at 295 (citing State v. Hutchins, 116 N.J. 457, 468 (1989)).

Here, we defer to the judge's factual findings, which are supported by sufficient credible evidence in the record.  State v. Hubbard, 222 N.J. 249, 262 (2015) (citing State v. Gamble, 218 N.J. 412, 424 (2014); State v. Elders, 192 N.J. 224, 243 (2007)).  She concluded that the officers had an objectively reasonable belief that defendant had been involved in the commission of a violent home-invasion robbery approximately two weeks earlier, and that his cohort confessed and said defendant still possessed the weapon they used.

A-1649-17T2

Police also suspected defendant was a member of the Latin Kings gang, known for violent conduct.  When they arrived at the scene, police observed someone they believed to be defendant in his apartment with a baby in his arms, and defendant resisted all attempts to come to the door.  Police also heard the baby crying and "loud bangs" emanating from the apartment.  Under the totality of these circumstances, the warrantless entry of defendant's apartment was justified.

## III.

We next deal with two arguments defendant makes regarding the trial evidence.  He first contends that the judge should have sua sponte entered a judgment of acquittal on count seventeen charging him with third-degree hindering his own apprehension by concealing the gun in the trash can.  Citing State v. Fuqua, 303 N.J. Super. 40 (App. Div. 1997), defendant argues he could not be guilty of hindering by concealing evidence of an ongoing possessory crime, in this case, second-degree possession of a firearm.  We disagree.

Defendant never moved for a judgment of acquittal at trial but, if he had, it would have been necessary to determine "whether, 'based on the entirety of the evidence and after giving the State the benefit of all its favorable testimony and all the favorable inferences drawn from that testimony, a reasonable jury

could find guilt beyond a reasonable doubt.'" State v. Zembreski, 445 N.J. Super. 412, 430 (App. Div. 2016) (quoting State v. Williams, 218 N.J. 576, 594 (2014)). We apply the same standard. Ibid.

Defendant's reliance on Fuqua is entirely misplaced. N.J.S.A. 2C:29-3(b)(1) provides:

> A person commits an offense if, with purpose to hinder his own detention, apprehension, investigation, prosecution, conviction or punishment for an offense . . . he:
>
> Suppresses, by way of concealment or destruction, any evidence of the crime . . . which might aid in his discovery or apprehension or in the lodging of a charge against him[.]

In Fuqua, the issue was whether the defendant, who prior to his arrest had concealed cocaine in his socks, could be found guilty of possession of cocaine and guilty of hindering by concealing the cocaine under this subsection of the statute. 303 N.J. Super. at 45. We held:

> Insofar as this subsection relates to the concealment or destruction of evidence of a person's completed crime, such as tampering with a crime scene, disposing of a murder weapon or the like, the statute would have applicability. Where, however, the crime is an ongoing possessory offense, such as defendant's possession of the cocaine in this case, we question the application of this statute.

12

. . . .

> We therefore construe the language of this subsection to apply to evidence of crimes other than ongoing possessory crimes where the possession of the items or substance at that time is chargeable as a separate offense. The statute, where it speaks of concealment of "evidence of the crime" with the purpose of hindering the actor's apprehension, N.J.S.A. 2C:29-3[(b)](1), is sensibly construed to refer to evidence of a completed criminal act, not a current possessory crime.
>
> [Id. at 46–47.]

In this case, defendant was charged with the armed robbery and assault of M.M. that occurred days earlier, and the State contended the weapon defendant concealed in his neighbor's trash can was used to commit those crimes. The State provided sufficient proof at trial that defendant's purpose was not only to hide the gun he possessed at the time of his arrest, but also to conceal evidence of the earlier crimes. Although the jury did not convict him of those crimes, defendant was not entitled to a judgment of acquittal on the hindering charge.

In Point III, defendant contends for the first time on appeal that portions of his videotaped statement should have been redacted prior to being played for the jury. We review the argument under the plain error standard, i.e., whether any error was "clearly capable of producing an unjust result[.]" R. 2:10-2.

13

While being interrogated by police after his arrest, defendant denied that he possessed the gun, telling the officers, "It wasn't found in my house. It was found next door." What followed is the focus of defendant's argument:

> Detective: In your possession though, my man.
>
> Defendant: In my possession?
>
> Detective: In your possession.
>
> Defendant: You found me with the gun?
>
> Detective: I found it next to f***ing where you were laying. No, we're not going to play that game.

Defendant contends the detective's questioning was akin to the type of expert opinion testimony the Court disapproved in State v. Cain, 224 N.J. 410 (2016), and it improperly influenced the jury on the issue of whether defendant constructively possessed of the gun. The argument lacks sufficient merit to warrant extensive discussion. R. 2:11-3(e)(2).

In Cain, the Court held it was improper for the prosecutor to "pos[e] a hypothetical to an expert that elicits an answer that the defendant possessed drugs with the intent to distribute [because it] not only mimics the statutory language, but also implicitly expresses the expert's opinion that the defendant is guilty." 224 N.J. at 427 (citing State v. Summers, 176 N.J. 306, 323 (2003) (Albin, J., dissenting)). Here, the detective's questioning was not substantive

evidence that defendant constructively possessed the gun, something defendant continued to deny. Additionally, defense counsel objected to other portions of the statement that were redacted, but never objected to this portion. This may have been a strategic decision because in her summation, defense counsel admitted that defendant "took his gun out of his house" on the day of his arrest but denied his involvement in the earlier robbery. Lastly, the judge provided full instructions on constructive possession, which we presume the jury followed. State v. Miller, 205 N.J. 109, 126 (2011) (citing State v. Nelson, 173 N.J. 417, 447 (2002)). We affirm defendant's convictions.

IV.

Defendant argues his sentence is excessive because the judge improperly granted the State's motion for an extended term of imprisonment and failed to appropriately balance the aggravating and mitigating sentencing factors. We disagree and affirm defendant's sentence.

After determining defendant was eligible for an extended term based on his multiple prior convictions, the judge found aggravating factors three, six, and nine. See N.J.S.A. 2C:44-1(a)(3) (the risk of re-offense); (6) (the extent of defendant's prior criminal record and seriousness of the current offense); and (9)

15

(the need to deter defendant and others).  She found no mitigating factors, N.J.S.A. 2C:44-1(b), and imposed the sentence we referenced.

"Appellate review of the length of a sentence is limited."  Miller, 205 N.J. at 127.  As the Court has reiterated:

> The appellate court must affirm the sentence unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [State v. Fuentes, 217 N.J. 57, 70 (2014) (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364–65 (1984)).]

When the State seeks an extended term pursuant to N.J.S.A. 2C:44-3(a), the judge must first review defendant's prior record of convictions and determine whether he is statutorily eligible to be sentenced as a persistent offender.  State v. Pierce, 188 N.J. 155, 168 (2006).  If defendant is eligible, the court may impose a sentence between "the minimum of the ordinary-term range and . . . the maximum of the extended-term range."  Id. at 169.  "[W]hether the court chooses to use the full range of sentences opened up to the court is a function of the court's assessment of the aggravating and mitigating factors,

16

including the consideration of the deterrent need to protect the public." Id. at 168.

Defendant contends that although he satisfied the statutory criteria for an extended term, it was an abuse of discretion for the judge to impose one in this case, because his actions caused no injury, and he lacked any intent to use the gun. However, the judge recounted the trial evidence, which included defendant's flight from police by "going through the attic . . . dropping down into a neighbor's home, bringing a loaded gun into the home of strangers, where others, including a child[, were] present[,] while fleeing from the police." The judge found, and we agree, that an extended term was warranted "for the protection of the public."

Defendant contends the judge should have imposed the minimum five-year sentence for possession of the handgun, once again reiterating that his conduct neither caused nor threatened harm, which justified a finding of mitigating factors one and two. N.J.S.A. 2C:44-1(b)(1) and (2). As already stated, the judge made specific findings based upon the trial evidence that demonstrated defendant's conduct posed a serious risk of harm to others. Defendant also argues that the judge should have found mitigating factor eleven, i.e., that his imprisonment would cause "excessive hardship to . . . his

17

dependents." N.J.S.A. 2C:44-1(b)(11). However, although the record reflects defendant had a young son, defendant fails to cite any other support for application of this mitigating factor, nor do we find any ourselves in the record. See, e.g., State v. Hyman, 451 N.J. Super. 429, 460 (App. Div. 2017) (rejecting application of (b)(11) because the defendant failed to show "his children would experience 'excessive' hardship from his absence," where the record indicated they and their mother lived apart from the defendant and she primarily cared for them; and the defendant failed to produce any "evidence that he was a significant source of support").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION