# RECORD IMPOUNDED

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0532-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JAMEL CARLTON, a/k/a
JAMEL A. CARLTON,
JAMAL CARLTON, and
GHOST J,

    Defendant-Appellant.

_____

<table>
<tr><td>

APPROVED FOR PUBLICATION
AS REDACTED

November 27, 2024

APPELLATE DIVISION

</td></tr>
</table>

Argued October 16, 2024 – Decided November 27, 2024

Before Judges Sumners, Susswein and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 20-12-0711.

Michael Timothy Denny, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Michael Timothy Denny, of counsel and on the briefs).

David M. Galemba argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Mercedes Robertson, Deputy Attorney General, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

The opinion of the court was delivered by

SUSSWEIN, J.A.D.

Defendant Jamel Carlton appeals from his jury trial convictions for aggravated sexual assault, sexual assault, aggravated assault, burglary, and criminal restraint against an Atlantic City casino-hotel housekeeper.  The State presented surveillance video recordings captured by multiple cameras throughout the casino-hotel.  The State also introduced DNA evidence showing that defendant sexually penetrated the victim, and photographic evidence of her injuries, corroborating her testimony that the encounter was violent and not consensual.  The trial judge sentenced defendant as a persistent offender to a forty-two-year prison term.

Defendant contends for the first time on appeal that his Confrontation Clause rights were violated when the trial judge allowed the jury to hear lay opinion testimony regarding the identification of the suspect shown on surveillance video.  He also contends the trial judge erred by preventing him from introducing evidence about the victim's prior sexual conduct and from discussing a newspaper article from 2005 describing prostitution activities at the same casino-hotel where the present crimes were committed in February 2018—thirteen years after the article was published.  In a self-represented brief, defendant raises several other contentions, including allegations of

2

prosecutorial misconduct. After carefully reviewing the record in light of the parties' arguments and governing legal principles, we affirm defendant's convictions.

Defendant also challenges his forty-two-year extended term sentence as a persistent offender. In his initial appeal brief, defendant argued the trial judge erred in finding that he was a persistent offender under N.J.S.A. 2C:44-3(a) based on two prior New York felony convictions—one committed in 2006 and the other committed in 2011. He also argued the trial judge abused her discretion by electing to impose an extended term of imprisonment after finding that defendant was eligible for an enhanced sentence as a persistent offender.

After the initial briefs were filed, the United States Supreme Court decided Erlinger v. United States, 602 U.S. 821 (2024), holding that under the Fifth and Sixth Amendments, a jury—not a sentencing judge—must decide whether prior convictions used to establish the basis for enhanced sentencing had been committed on separate occasions. The majority in Erlinger explained that the Supreme Court was not creating a new rule, but merely applying constitutional principles it had previously announced following its groundbreaking decision, Apprendi v. New Jersey, 530 U.S. 466 (2000). It is undisputed, however, that Erlinger abrogates New Jersey

Supreme Court precedent that embraced a contrary interpretation of the Apprendi doctrine, State v. Pierce, 188 N.J. 155 (2006).  Erlinger thus necessitates a significant change to New Jersey practices and procedures for imposing a persistent-offender extended term of imprisonment under N.J.S.A. 2C:44-3(a).[1]

The State acknowledges the Erlinger rule applies retroactively to "pipeline" cases and thus, defendant's Fifth and Sixth Amendment rights were violated when the judge rather than a jury decided that he was eligible for a persistent offender extended term.  The Attorney General nonetheless urges us to apply the harmless constitutional error doctrine to affirm defendant's extended-term sentence.

To be sure, the approach advocated by the Attorney General would conserve substantial judicial and prosecutorial resources by obviating the need to remand an untold number of pipeline cases for new jury trials.  We are nonetheless unpersuaded the harmless constitutional error doctrine can be applied in this case without eviscerating the Erlinger rule.  We are concerned that the essential nature of a harmless error analysis—which focuses on

---

[1]  We presume the Erlinger rule also applies to New Jersey's "three strikes" law, N.J.S.A. 2C:43-7.1, which likewise requires a finding that the prior crimes were committed on "separate occasions."

A-0532-22

whether the same outcome would have been reached if the error had not occurred—runs counter to the Erlinger Court's stern admonition that "[t]here is no efficiency exception to the Fifth and Sixth Amendments." 602 U.S. at 842. The Court added, "[i]n a free society respectful of the individual, a criminal defendant enjoys the right to hold the government to the burden of proving its case beyond a reasonable doubt to a unanimous jury of his peers 'regardless of how overwhelmin[g]' the evidence may seem to a judge." Ibid. (alteration in original) (quoting Rose v. Clark, 478 U.S. 570, 578 (1986)).

Furthermore, the Attorney General candidly acknowledged at oral argument that its harmless error argument would likely apply to most pipeline cases. That suggests, as a practical matter, the harmless error exception might swallow the rule, rendering hollow its retroactive application.

In the absence of further guidance from the United States Supreme Court on permissible exemptions to the Erlinger rule, we are constrained to vacate defendant's persistent-offender extended-term sentence and remand to the Law Division with instructions on how to remedy the constitutional violation.

5

I.

We discern the following facts and procedural history from the record.

A.

**[At the direction of the court, the published version of this opinion omits the court's summary of the facts. See R. 1:36-3.]**

B.

Defendant was charged in a superseding indictment with first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(3) (count one); second-degree sexual assault, N.J.S.A. 2C:14-2(c)(l) (count two); second-degree burglary, N.J.S.A. 2C:18-2(a)(l) (count three); third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(7) (count four); third-degree criminal restraint, N.J.S.A. 2C:13-2(a) (count five); fourth-degree obstructing administration of law, N.J.S.A. 2C:29-l(a) (count six); and a disorderly persons offense for resisting arrest, N.J. S.A. 2C:29-2(a)(1).

A jury trial was held in March 2022. The jury found defendant guilty on counts one through five. On September 7, 2022, the trial judge sentenced defendant to an extended term of imprisonment as a persistent offender, N.J.S.A. 2C:44-3(a). After merger, on count one, the judge imposed an aggregate term of forty-two years in prison subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. The judge further imposed parole

supervision for life, N.J.S.A. 2C:43-6.4, and ordered defendant to abide by the requirements of Megan's Law, N.J.S.A. 2C:7-1 to -23. On counts four and five, the judge sentenced defendant to two five-year prison terms to run concurrently with each other and the sentence imposed on count one. The judge dismissed count six and the disorderly persons offense. This appeal followed.

## II.

Defendant raises the following contentions for our consideration in his counseled brief:

> POINT I
>
> THE STATE IMPROPERLY BOLSTERED ITS CASE WITH INADMISSABLE HEARSAY AND INADMISSIBLE LAY OPINION TESTIMONY IMPLICATING THE DEFENDANT AS THE PERPETRATOR IN VIOLATION OF THE CONFRONTATION CLAUSE AND N.J.R.E. 701.
>
> A. [The ACPD Detective] And [The Security Specialist]'s Identifications Of The Man In The Video As Carlton Violated N.J.R.E. 701.
>
> B. Admission Of [The ACPD Detective] And [The Security Specialist]'s Hearsay Testimony That [The Casino-Hotel]'s Had Identified Carlton As The Suspect Violated The Confrontation Clause.

POINT II

THE TRIAL COURT VIOLATED DEFENDANT'S
RIGHT TO A COMPLETE DEFENSE BY
LIMITING THE EVIDENCE REGARDING
PROSTITUTION.

POINT III

DEFENDANT'S EXTENDED TERM SENTENCE
OF 42 YEARS WITH AN 85% PAROLE
DISQUALIFIER IS MANIFESTLY EXCESSIVE.

Defendant raises the following additional contentions in his self-represented brief:

POINT I

Whether Defendant's right to Miranda was violated
under the Constitution of New Jersey and the
Constitution of [the] United States.

POINT II

Whether Defendant was denied his right to be free
from unreasonable search and seizure under the
United States Constitution and the New Jersey
Constitution.

POINT III

Whether Defendant['s] right to Speedy Trial was
denied under the Due Process of Law.

POINT IV

Whether Trial Court erred when it allowed the
DNA into evidence.

POINT V

Whether Trial Court erred when it refused to put the time of the crime in the Jury Charge denying defendant an unfair Jury and Due Process of Law.

POINT VI

Whether Prosecutorial Misconduct led to defendant being found Guilty by an unfair Jury.

POINT VII

Whether the Defendant was denied his right to Discovery.

Defendant raises the following contention in a supplemental brief filed by leave granted following the United States Supreme Court's decision in Erlinger[2]:

POINT I

THE FIFTH AND SIXTH AMENDMENTS AND APPRENDI V. NEW JERSEY, 530 U.S. 466 (2000), REQUIRE THAT A JURY DECIDE THE EXISTANCE OF THE FACTS NECESSARY TO ESTABLISH THE PREDICATE FOR AN EXTENDED TERM UNDER N.J.S.A. 2C:44-3A.

III.

---

[2] We note both parties submitted abbreviated supplemental briefs. Defendant submitted a thirteen-page brief along with his motion for leave to file a supplemental brief, which we granted. We directed the State to file a responsive supplemental brief no longer than fifteen pages. We did not permit a reply brief. We add that neither party requested oral argument. We sua sponte scheduled oral argument limited to the Erlinger-related issues.

A-0532-22

[At the direction of the court, the published version of this opinion omits the court's discussion of defendant's Confrontation Clause claim. See R. 1:36-3.]

IV.

[At the direction of the court, the published version of this opinion omits the court's discussion of defendant's argument about improper lay opinion testimony. See R. 1:36-3.]

V.

[At the direction of the court, the published version of this opinion omits the court's discussion of the trial judge's evidentiary rulings. See R. 1:36-3.]

VI.

[At the direction of the court, the published version of this opinion omits the court's discussion of defendant's pro se arguments. See R. 1:36-3.]

## VII.

We next turn our attention to defendant's sentencing arguments. Following the jury verdict, the State in accordance with Rule 3:21-4(e)[3] filed a motion to sentence defendant to an extended term as a persistent offender pursuant to N.J.S.A. 2C:44-3(a). In support of its motion, the State relied on two certified judgments of conviction from New York as well as a printout of defendant's criminal history. Those documents revealed a New York felony conviction on February 26, 2007 for third-degree[4] robbery committed on September 20, 2006 and a New York felony conviction on November 17, 2011 for fourth-degree possession of stolen property committed on May 10, 2011. The trial judge granted the State's motion to sentence defendant to a discretionary extended term as a persistent offender and sentenced defendant to forty-two years in prison, subject to NERA.

---

[3] Rule 3:21-4(e) provides that a motion for an extended term must be filed "within 14 days of the of the entry of the defendant's guilty plea or the return of the verdict." In light of Erlinger, this provision has become obsolete since the prosecutor's decision to seek—or at least preserve the option to seek—a persistent-offender extended term must now be made at a much earlier stage of the prosecution considering the requirement, discussed in section IX, infra, that a grand jury, not just a petit jury, must find certain facts to establish eligibility for a persistent-offender extended term. We recommend the Supreme Court Criminal Practice Committee revise or replace the current rule to account for the new procedures that are needed to comply with Erlinger.

[4] We note that degree classifications under New York law are different from the classifications set forth in N.J.S.A. 2C:43-1(a) and N.J.S.A. 2C:43-6(a).

In his initial appeal brief, defendant argues the forty-two-year sentence is manifestly excessive. He also contends the trial judge erred in determining defendant was eligible for an extended term as a persistent offender, arguing that although "the third-degree charge in New York is called robbery, the elements of the crime itself are nearly the same as New Jersey's theft from a person charge . . . N.J.S.A. 2C:20-2(b)(d)," which is designated under New Jersey law as a third-degree crime, as distinct from robbery, N.J.S.A. 2C:15-1, which is designated as either a first or second-degree crime.[5]

Defendant also argues that because both New York convictions were for non-violent property crimes, the trial judge should not have relied on them to impose an enhanced sentence. Finally, defendant argues in his initial counseled brief that the trial judge failed to provide reasons to impose the discretionary extended term after having found defendant eligible for a persistent-offender sentence.

A.

---

[5] But even accepting, for argument's sake, that defendant's New York robbery conviction is congruent to a third-degree theft-from-a-person crime under New Jersey law, the fact remains that the New York conviction was punishable by more than one year in prison under New York law, which is all that matters for deciding whether a conviction in another jurisdiction is a prior crime when determining whether a defendant is a persistent offender. See Section X, infra, discussing N.J.S.A. 2C:44-4(c).

As we have noted, on June 21, 2024—after both defendant and the State filed their initial briefs in this appeal—the United States Supreme Court decided Erlinger, which held that a jury, not the sentencing judge, must decide the existence of the facts necessary to establish the grounds for a sentence enhancement based on prior convictions for offenses committed on separate occasions. 602 U.S. at 849.

In Apprendi, the United States Supreme Court changed the legal landscape for imposing enhanced sentences. The Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Erlinger is the latest in a series of Supreme Court decisions explaining that, under the Apprendi doctrine, a jury must find the facts necessary for sentencing enhancements. In Almendarez-Torres v. United States, 523 U.S. 224 (1998), the Court focused on an exception contemplated in the initial formulation of the basic Apprendi rule. Specifically, the Court in Almendarez-Torres reiterated and amplified that the "fact of an earlier conviction" need not be submitted to a jury. 523 U.S. at 224.

In Erlinger, the Court considered the boundaries of that exception, addressing whether a judicial determination that past offenses had been

committed on different occasions, which is necessary for enhanced sentencing under the federal Armed Career Criminal Act (ACCA),[6] violated the defendant's Fifth and Sixth Amendment rights. Erlinger, 602 U.S. at 830-34. The majority in Erlinger rejected the government's argument that the "different occasions" inquiry falls under the Almendarez-Torres exception. Id. at 836-38. The majority emphasized that Almendarez-Torres recognizes a "narrow exception" that permits "judges to find only 'the fact of a prior conviction.'" Ibid. (quoting Alleyne v. United States, 570 U.S. 99, 111, n.1 (2013)). The majority explained that "[a] judge may 'do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted of.'" Id. at 831, n.3 (quoting Mathis v. United States, 579 U.S. 500, 511-12 (2016)).

The Erlinger majority concluded the enhanced sentence imposed in that case was unconstitutional because:

---

[6] ACCA provides, in pertinent part:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years. . . .

> [18 U.S.C. § 924(e)(1).]

14

To determine whether Mr. Erlinger's prior convictions triggered ACCA's enhanced penalties, the district court had to do more than identify his previous convictions and the legal elements required to sustain them. It had to find that those offenses occurred on at least three separate occasions. And, in doing so, the court did more than Almendarez-Torres allows.

[Id. at 838-38.]

In reaching that conclusion, the Erlinger majority acknowledged that to determine the fact of a prior conviction, a sentencing judge may "need to know the jurisdiction in which the defendant's crime occurred and its date in order to ascertain what legal elements the government had to prove to secure a conviction in that place at that time." Id. at 839. The majority also recognized that to obtain that information, a sentencing judge "may sometimes consult 'a restricted set of materials,' often called Shepard[7] documents, that include judicial records, plea agreements, and colloquies between a judge and the defendant." Ibid. (quotations omitted). Importantly, however, the Erlinger majority emphasized:

None of that . . . means that a court may use Shepard documents or any other materials for any other purpose. To ensure compliance with the Fifth and Sixth Amendments, a sentencing judge may use the information [the judge] gleans from Shepard documents for the "limited function" of determining the fact of a prior conviction and the then-existing

---

[7] Shepard v. United States, 544 U.S. 13 (2005).

15

elements of that offense. "[N]o more" is allowed. In particular, a judge may not use information in Shepard documents to decide "what the defendant . . . actually d[id]," or the "means" or "manner" in which [the defendant] committed [their] offense in order to increase the punishment to which [the defendant] might be exposed.

[Id. at 839-40 (citations omitted).]

Applying those principles to the facts in the case before it, the Erlinger majority concluded:

To determine what legal elements attached to Mr. Erlinger's decades-old offenses, the court might have needed to consult Shepard documents to ascertain the jurisdiction in which they occurred and the date on which they happened. But the court had no need or authority "to go any further," and assume for itself the responsibility of deciding whether Mr. Erlinger's past offenses differed enough in time, location, character, and purpose to have transpired on different occasions. Let alone undertake that inquiry all with an eye toward increasing his punishment. The Fifth and Sixth Amendments "contemplat[e] that a jury—not a sentencing court—will find such facts, unanimously and beyond a reasonable doubt."

[Id. at 840 (citations omitted).]

B.

The New Jersey persistent offender statute provides that upon application of the prosecuting attorney, a person may be sentenced to an extended term of imprisonment if the individual "has been convicted of a

16

crime of the first, second or third degree and is a persistent offender."

N.J.S.A. 2C:44-3(a). The statute further defines a "persistent offender" as:

> [A] person who at the time of the commission of the crime is 21 years of age or over, who has been previously convicted on at least two separate occasions of two crimes, committed at different times, when he was at least 18 years of age, if the latest in time of these crimes or the date of the defendant's last release from confinement, whichever is later, is within 10 years of the date of the crime for which the defendant is being sentenced.
>
> [Ibid.]

At the time of defendant's sentencing hearing, our Supreme Court's decision in Pierce controlled. The Pierce Court held that a sentencing court "does not engage in impermissible fact-finding when it assesses a prior record of convictions and determines that a defendant is statutorily eligible for a discretionary extended-term as a persistent offender." 188 N.J. at 158. The Court added there was "no Sixth Amendment violation in the sentencing court's consideration of objective facts about defendant's prior convictions, such as the dates of convictions, his age when the offenses were committed, and the elements and degrees of the offenses, in order to determine whether he qualifies as a 'persistent offender.'" Id. at 163. Without question, Erlinger

abrogates the rule announced in Pierce with respect to the dates of convictions and a defendant's age when the offenses were committed.[8]

C.

The State argues in its supplemental brief that defendant's "newly minted argument that his extended-term sentence is unconstitutional comes too late." We disagree and decline to impose a procedural bar that would categorically deny defendant a remedy for the constitutional violation that occurred in this case. We see no basis to fault the trial judge, prosecutor, defendant, or his counsel for following the clear rule our Supreme Court announced in Pierce and "for not anticipating a change in law." See State v. Harris, 181 N.J. 391, 436 (2004). While we might be prepared to apply plain error analysis in these circumstances, see United States v. Cotton, 535 U.S. 625 (2002), we are not prepared to categorically disregard an uncontroverted constitutional error simply because no one had the prescience to foretell the holding in Erlinger. Cf. R. 2:10-2.

D.

---

[8] As we explain in Section X, Almendarez-Torres and Erlinger permit a judge to make findings concerning the elements of the earlier crime of conviction. The statutorily-defined elements of a crime are pure legal matters determined by reading the plain text of a statute. See also infra, note 10.

18

Turning to the substantive merits of defendant's constitutional challenge to his extended-term sentence, as we have noted, the Attorney General acknowledges the Erlinger rule applies retroactively to persistent-offender cases, like this one, that are still in the direct appeal "pipeline." See State v. Wessells, 209 N.J. 395, 412 (2012) (noting that new rules "for the conduct of criminal prosecutions" are to "be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past.") (quoting Griffith v. Kentucky, 479 U.S. 314, 328 (1987)). See also State v. Grate, 220 N.J. 317, 335 (2015) (affording pipeline retroactivity to Alleyne,[9] 570 U.S. at 99), and State v. Natale, 184 N.J. 458, 494 (2005) (affording pipeline retroactivity to Blakely v. Washington, 542 U.S. 296 (2004)). The Attorney General also acknowledges that defendant's Fifth and Sixth Amendment rights as explained in Erlinger were violated when the trial judge, rather than a jury, made factual findings regarding extended-term eligibility beyond the fact of his prior convictions.

Before we address the Attorney General's harmless constitutional error argument, we deem it important to point out that our persistent offender statute

_____

[9] The Court in Alleyne applied Apprendi to any fact that increases a mandatory minimum sentence, overruling its prior decision in Harris v. United States, 536 U.S. 545 (2002). 570 U.S. at 103.

requires proof beyond that a defendant committed the prior crimes on separate occasions. N.J.S.A. 2C:44-3(a) prescribes the following fact-sensitive elements, each of which a unanimous jury must find beyond a reasonable doubt to establish that a defendant is a persistent offender eligible for an extended term of imprisonment: (1) the defendant must have been 21 years of age or older at the time of the commission of the present first, second, or third degree crime for which the extended term is sought; (2) the defendant must have been previously <u>convicted</u> of predicate crimes on at least two separate occasions, meaning the dates that the prior convictions were entered are different; (3) the defendant must have <u>committed</u> the prior crimes at different times; (4) the defendant must have been at least 18 years of age when the prior crimes were committed; and (5) the latest of the prior crimes, or the date of the defendant's release from confinement when applicable, whichever is later, is within ten years of the date of the crime for which the defendant is being sentenced.

The foregoing factual predicates to enhanced-sentence eligibility are all case-sensitive, meaning that they must be proved on a case-by-case basis by means of the defendant's criminal history records, and cannot be established

solely by reading the text of a statute.[10]  See N.J.S.A. 2C:44-4(d) ("Any prior conviction may be proved by any evidence, including fingerprint records made in connection with arrest, conviction or imprisonment, that reasonably satisfies the court that the defendant was convicted.").  Consider, by way of example, a person less than 18 years of age can be waived to adult court and convicted and sentenced as an adult.  See N.J.S.A. 2A:4A-26.1.  In those circumstances, the conviction would not constitute a prior crime for purposes of N.J.S.A. 2C:44-3(a).  We view the determination of a defendant's age at the time of the prior crimes to be comparable, for purposes of Erlinger analysis, to the determination of the dates of those prior crimes that are needed to establish that they were committed on separate occasions.

Although the parties in their supplemental briefs focus on the "separate occasions" prerequisite[11] specifically addressed in Erlinger's analysis of ACCA, a unanimous jury must find beyond a reasonable doubt that all five of

---

[10]  Thus, these predicate facts stand in contrast to the prior crimes' statutorily-defined elements or their statutorily-assigned degree, which determines the maximum sentence that can be imposed on those convictions.  See, infra, section X.

[11]  Defendant in the last paragraph of his supplemental brief also mentions the remoteness element in N.J.S.A. 2C:44-3(a), which requires that the latest prior crime or release from prison, whichever is later, occurred within ten years of the present crime.

the above-enumerated factual predicates are present, or the defendant must admit these predicates as part of a knowing and voluntary waiver of the right to a jury trial with respect to extended-term eligibility.

## VIII.

That brings us to the Attorney General's principal argument that "proceedings prior to the date of Erlinger,[12] where a judge made the requisite 'separate occasions' findings at sentencing, are subject to harmless error analysis." In support of that contention, the Attorney General cites to Chief Justice Roberts' one-paragraph concurring opinion in Erlinger and to Justice Kavanaugh's dissenting opinion. The Attorney General also cites to the Erlinger oral argument transcript, which purports to show that the parties generally agreed that harmless error review is permitted.[13]

The Attorney General argues because the Erlinger majority "neither repudiated nor otherwise contested" the applicability of the harmless error analysis, we may then excuse the constitutional violation in this instance as

---

[12] As we explain in section VIII(C), infra, the Attorney General appears to be arguing that the harmless error doctrine does not apply equally to cases where the sentencing hearing occurs after Erlinger was decided. Rather, the Attorney General's harmless-constitutional-error argument seems to be confined to "pipeline" cases.

[13] See Transcript of Oral Argument at 16, 24-25, 44-45, 101-02, Erlinger v. United States, 602 U.S. 821(2024) (No. 23-370).

A-0532-22

harmless error on the grounds that "no 'rational jury' could have found that defendant committed the two prior offenses at the same time."  The outcome of this issue hinges on whether we accept the premise that <u>Erlinger</u> violations are amenable to harmless error analysis; to borrow the phraseology our Supreme Court used repeatedly in <u>Pierce</u>, 188 N.J. at 163, 167, 169, there is no reasonable doubt the "objective" facts of defendant's criminal background establish that he is a persistent offender withing the meaning of N.J.S.A. 2C:44-3(a).  The critical question is whether the harmless constitutional error doctrine can be invoked to excuse the failure to have a jury decide those facts.

A.

The harmless constitutional error doctrine is well-accepted in both federal and New Jersey jurisprudence.  As our Supreme Court noted in <u>State v. Camacho</u>,"[t]he [United States] Supreme Court has emphasized that 'most constitutional errors can be harmless,' and are therefore not subject to automatic reversal."  218 N.J. 533, 547 (2014) (quoting <u>Arizona v. Fulminante</u>, 499 U.S. 279, 306 (1991)).  That said, the only mention of the harmless constitutional error doctrine in <u>Erlinger</u> is in the Chief Justice's succinct concurring opinion that incorporates by reference an argument raised in a dissenting opinion.  <u>Cf.</u> <u>State v. Masi</u>, 72 N.J. Super. 55, 58 (Law Div. 1962) (noting that language in a United States Supreme Court concurring opinion

23

was persuasive but not binding upon the court); <u>Guido v. Duane Morris, LLP</u>, 202 N.J. 79, 91 n.4 (2010) ("A dissent, of course, is not precedent."). As the Attorney General acknowledges, the harmless constitutional error doctrine was not mentioned at all in the majority opinion that announced the constitutional rule we are now charged to enforce and safeguard.

The majority opinion's silence on the question of harmless constitutional error is conspicuous, especially considering that opinion comments freely and repeatedly on other points made in the other Justices' opinions. It appears, moreover, the majority made a conscious decision not to address whether and in what circumstances an <u>Erlinger</u> violation might be deemed harmless error. The majority opinion tellingly states, "[w]hile recognizing Mr. Erlinger was entitled to have a jury resolve ACCA's [separate] occasions inquiry unanimously and beyond a reasonable doubt, we decide no more than that." 602 U.S. at 835.

The Attorney General posits the majority's silence signals acceptance of the Chief Justice's concurring opinion. Perhaps. But it is equally plausible that the majority meant to signal it was <u>un</u>willing to embrace a harmless error exception but was not prepared to tackle the issue directly at this time. Our task in this appeal is to decide an important constitutional question based on legal analysis of what is written in authoritative precedents, not conjecture

24

based on what is <u>not</u> said in those precedents. We decline to speculate on why the <u>Erlinger</u> majority chose not to mention the harmless constitutional error doctrine.

B.

The State also relies on several New Jersey precedents to support its contention the harmless constitutional error doctrine applies to <u>Erlinger</u> violations in pipeline case. For example, the State cites to <u>State v. Johnson</u>, 166 N.J. 523, 546 (2001), noting in that case, despite holding that NERA required a jury determination that a defendant committed a "violent" crime before the sentencing court could impose the statute's eighty-five percent period of parole ineligibility,[14] our Supreme Court concluded there was no need to disturb the defendant's sentence "because the facts adduced at trial establish that the jury made that finding [that the defendant committed a violent crime] beyond a reasonable doubt."

<u>Johnson</u> is distinguishable from the case before us, however, because here no evidence was introduced at trial on whether defendant's prior crimes occurred at different times. Indeed, the jury was never told about defendant's

---

[14] NERA has since been amended. The revised NERA formulation avoids <u>Apprendi</u> issues by specifically designating the crimes that are subject to the eighty-five percent parole ineligibility feature, rather than requiring the sentencing judge to make a fact-sensitive finding that the present crime is "violent."

25

prior crimes. Accordingly, unlike the situation in Johnson, the jury made no finding on the predicate facts needed to establish persistent-offender extended-term eligibility.

The State's reliance on State v. Purnell, 161 N.J. 44 (1999), is also unavailing. In that case, our Supreme Court ruled that the holding in State v. Anderson, 127 N.J. 191 (1992)—reallocating the fact-finding function from judge to jury on the materiality element of perjury—did not command full retroactive application because it was not "intended to enhance the reliability of the fact-finding process." Purnell, 161 N.J. at 55. In the present matter, however, we are not asked to afford "full" retroactivity to the Erlinger Rule, but rather only pipeline retroactivity to cases pending on direct appeal. And in any event, it does not matter whether the Erlinger rule enhances the reliability of the fact-finding process. The Apprendi/Erlinger doctrine's undergirding rationale is not that juries are better equipped than judges to determine the facts needed to establish extended-term eligibility. Rather, the doctrine is based on the principle that this fact-finding process falls within the realm of the Fifth and Sixth Amendment right to a jury trial.

Nor are we persuaded by the Attorney General's argument that:

> [a]lthough Erlinger now holds that a prior-offense element is an essential element that must be proven to a jury beyond a reasonable doubt, a prior-offense element is not "material," but rather an attendant

26

circumstance that accordingly should be treated differently when considering whether its omission is subject to harmless error review.

We believe the distinction the Attorney General draws between various types of elements misses the mark. Nothing in the Erlinger majority opinion suggests the constitutional rule it announced is somehow less important because the facts that a jury must find do not fall under the rubric of "material" elements as defined in N.J.S.A. 2C:1-14(i), as distinct from the term "element of an offense" as defined in N.J.S.A. 2C:1-14(h). The terminology distinction the Attorney General would have us draw seems unimportant considering that N.J.S.A. 2C:1-13(a) requires all elements must be proved beyond a reasonable doubt.

More importantly, we read the majority opinion as establishing a fundamental constitutional right, one not easily dispensed with. We see no point in quarreling over the terminology used to characterize the "separate occasions" fact specifically at issue in Erlinger. The majority could not have made more plain that, under the Fifth and Sixth Amendments, a jury is required to find that fact beyond a reasonable doubt as a precondition to imposing an enhanced sentence under ACCA. Stated another way, the Erlinger rule remains a matter of constitutional imperative regardless of

27

whether the "separate occasion" finding is characterized as a "material element," a mere "element," or an "attendant circumstance."

The Attorney General also relies on the United States Supreme Court's decision in Cotton in support of its argument that harmless error review applies to Erlinger pipeline violations. In Cotton, the defendant was charged with "conspiracy to distribute and to possess with intent to distribute a 'detectable amount ' of cocaine and cocaine base." 535 U.S. at 627-28. The jury found the defendant guilty at trial. Id. at 628. At sentencing, the District Court judge made a finding of drug quantity that implicated enhanced penalties under federal law and thereupon sentenced the defendant to thirty-years imprisonment. Ibid. The defendant did not object to the fact that the sentences were based on an amount of drug quantity not alleged in the indictment. Ibid.

While the defendant's appeal was pending, the Court decided Apprendi. Ibid. The defendant then argued in the Court of Appeals that his sentence was invalid under Apprendi because the issue of drug quantity was neither alleged in the indictment nor submitted to the petit jury. Id. at 628-29. In its decision, the Court of Appeals first noted that because the defendant failed to raise the argument regarding his sentence before the trial judge, plain error review applied. Id. at 629. Applying that standard, the Court of Appeals vacated the

28

defendant's sentence, concluding that "because an indictment setting forth all the essential elements of an offense is both mandatory and jurisdictional, . . . a court is without jurisdiction to . . . impose a sentence for an offense not charged in the indictment." Ibid. Such an error, the Court of Appeals added, seriously impacted "the fairness, integrity or public reputation of judicial proceedings." Ibid.

The United States Supreme Court reversed. Ibid. After concluding that the District Court judge did have jurisdiction, the Supreme Court also applied the plain error test but found that while the error was indeed "plain," id. at 631-32, it "did not seriously affect the fairness, integrity, or public reputation of judicial proceedings." Id. at 632-33. The Court concluded that the evidence of drug quantity presented at the defendant's trial was "overwhelming" and "essentially uncontroverted." Id. at 633. Specifically, the Court referred to testimony from police officers regarding the drugs seized, and the testimony from one of the defendant's co-conspirator's regarding the amount she witnessed being bagged. Ibid.

The situation in Cotton is starkly different from the facts in the matter before us. In Cotton, the Court stressed that there was overwhelming evidence of drug quantity presented at the defendant's trial. Ibid. Here, in contrast, the jury heard no evidence concerning defendant's prior New York convictions.

29

Thus, while the facts needed to establish persistent-offender extended-term eligibility may well be "overwhelming" and "essentially uncontroverted" as in Cotton, ibid.—a circumstance we discuss in the next subsection—those facts were not presented to the jury, which is the crux of the Erlinger violation.

## C.

That leads us to examine the fundamental essence of the harmless error analysis, which considers, ultimately, whether the outcome would have been different if the error had not occurred. Importantly, the Erlinger majority explicitly rejected the argument that a jury verdict is not required when the predicate facts for an enhanced sentence are so "'straightforward' that sending it to a jury would be pointlessly inefficient." 602 U.S. at 839 (citation to amicus brief omitted). The majority opinion later underscored that point, explaining:

> Often, a defendant's past offenses will be different enough and separated by enough time and space that there is little question [the defendant] committed them on separate occasions. But none of that means a judge rather than a jury should make the call. There is no efficiency exception to the Fifth and Sixth Amendments. In a free society respectful of the individual, a criminal defendant enjoys the right to hold the government to the burden of proving its case beyond a reasonable doubt to a unanimous jury of his peers "regardless of how overwhelmin[g]" the evidence may seem to a judge.

30

[Id. at 842 (quoting Rose v. Clark, 478 U.S. 570, 578 (1986)).]

That admonition is in tension—if not fundamentally inconsistent—with the inherent focus in harmless error analysis on whether the outcome would have been the same had the error not occurred considering the weight of the properly-admitted evidence. In this instance, the Attorney General argues, "the 'overwhelming' and 'uncontested' evidence leaves no doubt that defendant was a persistent offender," citing Neder v. United States, 527 U.S. 1, 17 (1999). That assessment may well be true but begs the question of whether, after Erlinger, the decision on extended-term eligibility can be kept entirely from a jury and yet affirmed on the grounds the factual basis for an extended term is overwhelming. Neder involved the failure to instruct the jury on an element of the charged crime that was "uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error." 527 U.S. at 17. The Court concluded the error "did not contribute to the verdict obtained," and thus was properly found to be harmless. Ibid. (quoting Chapman v. California., 386 U.S. 18, 24 (1967)).

But even putting aside that in this case no evidence relevant to defendant's persistent-offender status was presented to the jury, the Attorney General's reasoning is hard to reconcile with the Erlinger majority's clear holding that the "separate occasions" decision under ACCA had to be made

31

A-0532-22

by a jury "regardless of how overwhelming the evidence may seem to a judge." Erlinger, 602 U.S. at 842 (quotation marks and citation omitted).[15]

In view of the Erlinger majority's unambiguous rejection of the notion that overwhelming evidence obviates the need to have a jury make the decision, we are not convinced the constitutional violation in this case can be "disregarded" under the plain error rule or any other species of harmless error analysis. Cf. Rule 2:10-2 ("Any error or omission shall be disregarded by the appellate court unless it is of such nature as to have been clearly capable of producing an unjust result, but the appellate court may, in the interests of justice, notice plain error not brought to the attention of the trial or appellate court."). Furthermore, as we have noted, the Attorney General acknowledged at oral argument that its harmless error argument would likely apply to the vast majority of pipeline cases. As a practical matter, that suggests, if given a foothold in pipeline cases, the harmless error exception might swallow the Erlinger rule.

---

[15] We note that in the portion of his dissent discussing harmless error, Justice Kavanaugh reasons that "[i]n most (if not all) cases, the fact that a judge rather than a jury applied ACCA's different-occasions requirement will be harmless. Whether prior felonies occurred on different occasions under ACCA is usually a straightforward question." Erlinger, 602 U.S. at 859 (Kavanaugh, J., dissenting). That rationale for applying the harmless error rule is at odds with the majority opinion's holding that a jury must make the enhanced sentence findings notwithstanding that the outcome is straightforward. Id. at 841.

More fundamentally, we are not convinced from our reading of the Erlinger majority opinion that the Fifth and Sixth Amendment right to have a jury decide fact-sensitive enhanced-sentence eligibility is less important or inviolable than the right to have a jury decide the fact-sensitive question of guilt. Certainly, denying a criminal defendant a jury trial on the question of factual guilt can never be deemed harmless constitutional error on the grounds that the State's proofs are so overwhelming as to render a guilty verdict a foregone conclusion. A key question the State's harmless constitutional error argument raises, therefore, is whether the Fifth and Sixth Amendment rights recognized in Erlinger regarding the determination of enhanced-sentence eligibility are deserving of less vigorous protection than the right to a jury trial on factual guilt or innocence.

Based on the opinion's clear directive, we are reticent to conclude that the Erlinger majority meant for the constitutional rights recognized in Apprendi and its progeny to be treated essentially as a second-class version of the right to a jury trial. Nothing in the majority opinion supports that proposition, and much of the opinion affirmatively contradicts it, including the section in the opinion that recounts the origins, evolution, and historical importance of the right to a jury trial. See Section II(A), id. at 828-834. We presume that section would not have been included in the majority opinion if

33

it was the majority's intent to relegate <u>Apprendi</u>-related jury-trial rights to second-class status as compared to the right to a jury trial on the question of guilt or innocence.

Relatedly, the Attorney General's argument suggests the harmless-constitutional-error doctrine should be applied more liberally to pipeline cases than to cases involving the prospective application of the <u>Erlinger</u> rule. The Attorney General's supplemental brief acknowledges that while the trial judge's persistent-offender decision was "in accordance with established practice, that decision is now error under <u>Erlinger</u> because defendant's appeal is on direct review." In the next sentence, the supplemental brief continues, "[b]ut proceedings prior to the date of <u>Erlinger</u>, where a judge made the requisite 'separate occasions' findings at sentencing, are subject to harmless error analysis." The implication is that harmless error analysis either will not apply to proceedings <u>after</u> the date of <u>Erlinger</u> or it will be applied in a different way.

If that is indeed the Attorney General's position, we are unpersuaded. The retroactive application of a constitutional rule to a pipeline case means, simply, the rule applies in that case, presumably with full force and effect. We do not understand pipeline retroactivity to mean that the constitutional rule when applied retrospectively is somehow softened or otherwise enforced

34

less rigorously than in cases where the rule will be applied prospectively. Rather, as we see it, once there is a concession that a constitutional right was violated, that violation is either harmless or not regardless of when it was committed.

While we are mindful of the administrative burdens that will result from remanding a potentially large number of pipeline cases for new jury trials, we are not prepared to hold that the defendants in pipeline case are entitled to less vigorous protection of their Fifth and Sixth Amendment rights than defendants whose crimes, indictments, or trials happen to occur after June 21, 2024. See Erlinger, 602 U.S. at 842 ("There is no efficiency exception to the Fifth and Sixth Amendments."). The notion that there can be any such differentiated enforcement of the Erlinger rule would suggest that there is another de facto retroactivity option,[16] namely partial or attenuated application of a rule to cases pending direct appeal. We are not familiar with any such permutation in New Jersey or federal retroactivity jurisprudence.

---

[16] The range of retroactivity options includes prospective application only, "full" retroactive application to all cases, including those where the direct appeal has already been decided (e.g., post-conviction relief cases), and pipeline retroactive application to cases where a direct appeal has not yet been decided. See State v. Knight, 145 N.J. 233, 251 (1996) (enumerating the alternatives available which are purely prospective, prospective, pipeline retroactive, and fully retroactive); State v. Dock, 205 N.J. 237, 256 (2011) (explaining the four options in any case to determine the retroactive effect of a new rule of criminal procedure).

A-0532-22

We do not mean to suggest that the harmless constitutional error doctrine can never apply to an Erlinger violation. But this is not a situation, for example, where a jury was provided with a flawed special verdict form or faulty instructions that were not objected to by the defense.[17] Nor is this a situation where a jury was asked to make findings on some but not all the facts needed to establish the basis for an enhanced sentence. Here, none of the required findings that we have enumerated were submitted to a jury. The violation, in other words, amounts to a complete and absolute denial of the right to a jury trial on the sentence-enhancement determination.

For all these reasons, we decline to put the cart before the proverbial horse by excusing the failure to have a jury decide defendant's extended-term eligibility on the grounds that affording a new jury trial on remand is highly unlikely to produce a different result than the one reached by the sentencing judge. Until the United States Supreme Court has an opportunity to more fully address the practical implications of the Erlinger rule, including whether and

---

[17] We offer no guidance in this opinion on the jury instructions that should be given in cases that are remanded for new jury trials whose scope is limited to determining whether the defendant is eligible for an extended term as a persistent offender. We expect the Supreme Court Model Jury Charge (Criminal) Committee and Supreme Court Criminal Practice Committee will, respectively, develop model jury charges, special verdict forms, and uniform practices and procedures for cases remanded to rectify violations of the Erlinger rule.

36

in what circumstances harmless error analysis is appropriate, we decline to disregard the uncontroverted constitutional violation that occurred in this case.

IX.

Defendant argues in his supplemental brief he also was denied the right to have a grand jury determine the facts needed to establish extended-term eligibility. During oral argument, the Attorney General acknowledged that going forward, the facts that a petit jury must find under the Erlinger rule must also be presented to and found by a grand jury.[18] See State v. Rodriguez, 234 N.J. Super. 298, 304-05 (App. Div. 1989) ("Generally, facts which will aggravate the crime of which a defendant is accused and enhance the punishment to which he will be subject are said to be an 'element' of the offense, N.J.S.A. 2C:1-14(h), and must therefore be charged in the indictment.") (citing State v. Ingram, 98 N.J. 489 (1985)); see also State v. Franklin, 184 N.J. 516, 534 (2005) ("That a defendant possessed a gun during the commission of a crime is a fact that must be presented to a grand jury and

---

[18] We note there is precedent for "bifurcating" a presentation to a grand jury so that the grand jury first determines whether there is probable cause the defendant committed an offense and then separately considers whether there is probable cause to believe the defendant has prior conviction(s) when that is an element of the crime charged. We understand that process occurs routinely in cases where a defendant is indicted for possession of a firearm by a previously-convicted person (commonly referred to as the "certain persons" offense), N.J.S.A. 2C:39-7.

found by a petit jury beyond a reasonable doubt if the court intends to rely on it to impose a sentence exceeding the statutory maximum.").

The question remains what to do about pipeline cases. We hold that in cases such as this one that are remanded, the lack of a grand jury determination regarding extended-term eligibility will be rendered harmless not because the relevant facts are straightforward, but rather because a unanimous petit jury applying a much higher standard of proof than the one needed to return an indictment will find those facts. Stated another way, we see no need to remand for <u>both</u> a grand jury and petit jury to make the factual determinations that <u>Erlinger</u> requires.

We add that in these pipeline cases, a new indictment is not needed to provide defendants notice of the facts that must be considered by a grand jury going forward. <u>See</u> <u>State v. LeFurge</u>, 101 N.J. 404, 415 (1986) (holding that the grand jury right is fulfilled when an indictment "inform[s] the defendant of the offense charged against him, so that he may adequately prepare his defense" and is "sufficiently specific" both "to enable the defendant to avoid a subsequent prosecution for the same offense" and "'to preclude the substitution by a trial jury of an offense which the grand jury did not in fact consider or charge.'") (quoting first <u>State v. Lefante</u>, 12 N.J. 505, 509 (1953) and then <u>State v. Boratto</u>, 80 N.J. 506, 519 (1979)). Relatedly, pipeline cases such as

38

this one have been scrutinized by a judge who has reviewed defendant's eligibility for an extended term of imprisonment. In these circumstances, defendant is on clear notice as to the fact-sensitive questions that a petit jury must resolve on remand; there is no need for further clarification in the form of an indictment.

In sum, despite our reluctance to embrace the harmless constitutional error doctrine to avoid a rash of new jury trials, we confidently apply the harmless error principle to grand jury proceedings in pipeline cases in view of the well-established principle that when a petit jury finds a defendant guilty, errors before a grand jury are deemed harmless. See State v. Simon, 421 N.J. Super. 547, 551 (App. Div. 2011) (noting that "a guilty verdict is universally considered to render error in the grand jury process harmless"); State v. Ball, 268 N.J. Super. 72, 120 (App. Div. 1993) (concluding that "procedural irregularities in a grand jury proceeding are rendered harmless where defendant is ultimately found guilty by a petit jury"); see also State v. Warmbrun, 277 N.J. Super. 51, 61 (App. Div. 1994).

## X.

Having addressed the constitutional issues broached in Erlinger, we take a step back to address defendant's contention raised in his initial appeal brief that his prior New York convictions do not satisfy the requirements for

A-0532-22

persistent-offender extended-term eligibility. That contention lacks merit. N.J.S.A. 2C:44-4(c) provides that "[a] conviction in another jurisdiction shall constitute a prior conviction of a crime if a sentence of imprisonment in excess of one year was authorized under the law of the other jurisdiction." Our review of the relevant New York statutes shows that for both of defendant's prior crimes, the maximum sentence authorized by statute was in excess of one year. Specifically, defendant has two felony convictions for robbery in the third degree, N.Y. Penal Law § 160.05, and criminal possession of a stolen property (credit card) in the fourth degree, N.Y. Penal Law § 165.45. See N.Y. Penal Law § 70.00. (listing authorized sentencing of imprisonment for felonies).

In the interests of completeness, we deem it necessary to consider whether, under the Erlinger framework, it is for a judge or jury to determine that the authorized sentence for an out-of-state conviction exceeds one year of imprisonment. Although we exercise great caution before allowing a judge to decide any prerequisite to persistent-offender eligibility, we are satisfied that the maximum sentence authorized by another state's law is not a case-sensitive factual question akin to, for example, when a criminal act was committed or when a defendant was found guilty by a jury verdict or guilty plea. See supra, note 10. Rather, we deem the determination of the maximum authorized

40                                                                                    A-0532-22

sentence for a prior crime to be a pure legal matter comparable to ascertaining the elements of the predicate offense.  We note in this regard the majority in Erlinger re-affirmed that under the Almendarez-Torres exemption from the strictures of the Apprendi rule, a judge may determine "the fact of a prior conviction and the then-existing elements of that offense."  Erlinger, 602 U.S. at 839 (emphasis added) (citing Descamps v. United States, 570 U.S. 254, 260 (2013)).  The majority added, "[u]nder that exception, a judge may 'do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted of.'"  Ibid. (emphasis added) (citing Mathis, 579 U.S. at 511-12).

Accordingly, and even at the risk of stretching the Almendarez-Torres exception slightly, we deem the statutorily-prescribed maximum authorized sentence for a crime for which the defendant has already been convicted by jury verdict or guilty plea is comparable to the statutorily-prescribed elements of that crime.  Because both circumstances are pure legal questions determined solely by reading statutory plain text, a judge both can and should decide them.

A-0532-22

## XI.

For the foregoing reasons, we vacate defendant's extended term sentence and remand for further proceedings in accordance with the Erlinger rule to have a jury determine whether defendant is eligible for enhanced punishment as a persistent offender. We note the State on remand may elect to forego pursuing an extended term. In that event, defendant shall be resentenced within the "ordinary" range, see N.J.S.A. 2C:43-6(a), for the crimes he was convicted.

We further note the parties may enter into a negotiated post-conviction agreement to avoid the need to convene a jury to decide whether defendant is eligible for an extended term as a persistent offender. If any such post-conviction agreement contemplates that defendant may be sentenced to an extended term as a persistent offender, the defendant must admit to the facts establishing persistent-offender eligibility in a manner consistent with the entry of a knowing and voluntary guilty plea pursuant to Rule 3:9-2, including the requirement for the defendant to acknowledge the "factual basis" for the plea.

If the State elects to seek imposition of the persistent-offender extended term and there is no post-conviction agreement, the trial judge shall convene a jury for trial limited to the question of whether defendant meets the definition

of a persistent offender set forth in N.J.S.A. 2C:44-3(a). The State shall have the burden of proving beyond a reasonable doubt all facts and circumstances needed to establish extended-term eligibility under N.J.S.A. 2C:44-3(a), including not only that the prior convictions were entered on separate occasions and the prior crimes were committed at different times, but also that defendant was 21 years of age or older when the present crime was committed, that defendant was at least eighteen years of age when the prior crimes were committed, and that the latest of the prior convictions or the date of defendant's last release from confinement, whichever is later, is within ten years of the date of the crime for which defendant is being sentenced.

We note in the interest of completeness that under the Erlinger framework as applied to N.J.S.A. 2C:44-3(a), the jury decides only if defendant is eligible for a discretionary extended term as a persistent offender. The trial judge retains discretion to decide whether to impose an extended term on a defendant that a unanimous jury finds to be eligible for an enhanced sentence. The judge likewise retains discretion, subject to the rules governing sentencing decisions, in determining the length of the sentence within the extended term range, see N.J.S.A. 2C:43-7(a).

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0532-22